**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                      No. 96-4290

NEIL ROGER BEIDLER,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Lynchburg.
Samuel G. Wilson, District Judge.
(CR-95-318)

Argued: January 29, 1997

Decided: April 10, 1997

Before RUSSELL and WILKINS, Circuit Judges, and
HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Russell and Judge Herlong joined.

_____

**COUNSEL**

**ARGUED:** John Fairfax Pyle, Lynchburg, Virginia, for Appellant.
Francis Marion Hamilton, III, Third Year Law Intern, Roanoke, Vir-
ginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States
Attorney, Thomas J. Bondurant, Assistant United States Attorney,
Roanoke, Virginia, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Neil Roger Beidler appeals his conviction and sentence for structuring currency transactions in violation of 31 U.S.C. § 5324(3) (1988), arguing primarily that the evidence is insufficient to support a conclusion that he willfully violated that provision. We conclude that the evidence establishes that Beidler engaged in extensive efforts to conceal his structuring activity and that the evidence of those efforts is sufficient to support an inference that he was aware of the illegality of his conduct. Accordingly, we affirm.

I.

A.

Federal law requires that domestic financial institutions file a currency transaction report (CTR) for a transaction or series of transactions involving currency in an amount greater than $10,000. See 31 U.S.C. § 5313(a) (1988); 31 C.F.R. § 103.22(a)(1) (1991). Furthermore, it is unlawful to structure, to assist in structuring, or to attempt to structure or to assist in structuring a currency transaction for the purpose of avoiding the reporting requirement. See 31 U.S.C. § 5324(3). In 1991, however, when the events relevant to this litigation transpired, an individual could not be convicted of violating the antistructuring law absent proof that he did so "willfully." 31 U.S.C. § 5322(a), (b) (1988) (providing for the imposition of penalties upon "[a] person willfully violating" the antistructuring laws). And, in Ratzlaf v. United States, 510 U.S. 135 (1994), the Supreme Court held that in order to show that a defendant acted "willfully" within the meaning of § 5322, "the Government must prove that the defendant acted with knowledge that his conduct was unlawful." Id. at 137.[1] Accordingly, under the law in effect when Beidler committed the acts in question, a conviction for violating the antistructuring laws required proof that the defendant structured or assisted in structuring

_____

[1] Congress has since amended § 5322 to omit the willfulness requirement with respect to violations of § 5324. See 31 U.S.C. § 5322(a), (b) (1994).

2

(or attempted to structure or to assist in structuring) currency transactions with one or more financial institutions; that he did so for the purpose of evading the CTR requirement; and that he acted with knowledge that his conduct was unlawful. See United States v. Walker, 25 F.3d 540, 548 (7th Cir. 1994).

B.

Viewed in the light most favorable to the Government, the evidence demonstrated the following. Beidler is a real estate agent whose firm possessed the exclusive right to market townhouses being constructed for the Wellington Forest retirement community located in Amherst, Virginia. In the fall of 1991, the builder of the development, John Batman, requested assistance from Beidler in procuring financing for the project. Beidler obtained the names of several potential investors, including Wendell Wood, from a business associate. Beidler was introduced to Wood by a mutual acquaintance.

Beidler ultimately obtained Wood's agreement to supply $100,000 in financing for the Wellington Forest project. However, Wood wished to protect his anonymity by concealing his identity as the source of funding for the development. Accordingly, Wood provided Beidler with cash in increments of up to "$20,000 or $30,000" at a time.[2] J.A. 351. Beidler deposited the funds into his own accounts and then drew checks on those accounts payable to Batman.

It is the manner in which Beidler deposited the funds from Wood that resulted in his indictment for structuring currency transactions. Rather than depositing each cash payment from Wood in a lump sum, Beidler made a total of 34 deposits to four different accounts at three different banks. Moreover, Beidler travelled to numerous branch locations to make the deposits. For example, between 9:00 a.m. and 2:00 p.m. on December 18, 1991, Beidler made the following deposits: Two deposits of $4,000 each at the Madison Heights branch of Central Fidelity Bank (each deposit was taken by a different teller; the record does not reveal the temporal proximity of the deposits); $4,000

_____

**2** Additionally, the deed of trust on the properties that Wood received in exchange for the funds identified him only as"holder." The parties agree that this practice, while uncommon, is not illegal.

3

at the Downtown branch of Central Fidelity Bank; $4,000 at the Amherst branch of Central Fidelity Bank; $4,000 at the Amherst branch of First Virginia Bank; $4,000 at the Downtown branch of First Virginia Bank; $4,000 at the Madison Heights branch of First Virginia Bank; and $5,000 at the Timberlake branch of First Virginia Bank. In short, Beidler deposited a total of $33,000 in eight deposits at seven different branches of two banks over the course of a five-hour period. Although the December 18 transactions were the most egregious in a consistent pattern, also noteworthy are Beidler's deposits totalling $18,500 at five branches of three banks on October 10 and 11, 1991 and his deposits totalling $18,000 at four different branches of a single bank over the course of two business days, October 18 and 21, 1991.

Beidler subsequently was convicted of one count of structuring currency transactions.**3** He was sentenced to 15 months imprisonment and ordered to pay a $5,000 fine.

II.

Beidler's primary contention on appeal is that the evidence is insufficient to support his conviction. A defendant challenging the sufficiency of the evidence to support his conviction bears "a heavy burden." United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir.), cert. denied, 116 S. Ct. 346 (1995). In reviewing the sufficiency of the evidence supporting a criminal conviction, our role is limited to considering whether "there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). We must bear in mind that"[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). Further, "if the evidence supports different, reasonable interpretations, the jury decides which

_____

**3** Beidler was also charged with conspiracy to commit offenses against the United States, see 18 U.S.C.A. § 371 (West 1966); money laundering, see 18 U.S.C.A. § 1956(a)(1)(B) (West Supp. 1996); and engaging in monetary transactions in property derived from specified unlawful activity, see 18 U.S.C.A. § 1957 (West Supp. 1996). The jury acquitted him of these charges.

4

interpretation to believe." Id. Reversal for insufficient evidence is reserved for the rare case "where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978). In sum, we "may not overturn a substantially supported verdict merely because [we] find[ ] the verdict unpalatable or determine[ ] that another, reasonable verdict would be preferable." United States v. Burgos , 94 F.3d 849, 862 (4th Cir. 1996) (en banc), cert. denied, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868).

At trial, Beidler candidly acknowledged that he received currency from Wood in amounts greater than $10,000 and that he divided the cash into smaller sums for deposit because he wished to avoid the filing of a CTR. Nevertheless, Beidler maintained that he was unaware that structuring transactions to evade the filing of a CTR was unlawful, instead asserting that he broke up the deposits of money from Wood in order to avoid small-town gossip. Before us, Beidler argues that the evidence concerning his acts of structuring does not support a conclusion that he knew it was unlawful to structure a currency transaction for the purpose of evading the reporting requirement.**4**

_____

**4** Beidler also maintains that the district court erred in refusing to give his proposed instruction on willfulness. We will find error in the refusal of the district court to give a proffered instruction only if the instruction was correct, was not otherwise covered by the charge to the jury, and dealt with a point so important to the trial "that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." United States v. Lewis, 53 F.3d 29, 32 (4th Cir. 1995) (internal quotation marks omitted). The district court gave the following instruction concerning the "willfulness" element of the structuring count:

> In order to prove the defendant guilty of [structuring currency transactions] the Government must prove the following essential elements beyond a reasonable doubt. First, the defendant willfully structured or attempted to structure a currency transaction with a financial institution and, second, the defendant structured or attempted to structure the currency transaction for the specific purpose of evading the currency transaction reporting requirements of the law.

> . . . .

> . . . [Y]ou are instructed that the Government must prove that the defendant acted willfully. Willfully means to act with knowl-

5

A.

Before turning to the merits of Beidler's sufficiency argument, we first must consider a legal issue that we have not previously decided: Whether evidence that a defendant attempted to conceal the structuring of currency transactions may, with or without other evidence, support a conclusion that the defendant knew structuring was unlawful. For the reasons set forth below, we hold that it may.

We begin with the proposition that evidence that a defendant structured currency transactions, without more, is not sufficient to prove that the defendant knew his conduct was illegal. See United States v. Ismail, 97 F.3d 50, 56-58 (4th Cir. 1996) (construing Ratzlaf to hold that evidence of structuring alone is not sufficient to prove knowledge of illegality); United States v. Vazquez, 53 F.3d 1216, 1225 (11th Cir. 1995). Rather, the "evidence must suggest knowledge of the antistructuring law as distinct from knowledge of financial institutions' reporting requirements." United States v. Wynn, 61 F.3d 921, 928 (D.C. Cir.), cert. denied, 116 S. Ct. 578 (1995). As the Ratzlaf Court recognized, however, knowledge of illegality may be proven by circumstantial evidence: "A jury may, of course, find the requisite knowledge [that structuring was unlawful] by drawing reasonable

_____

edge that one[']s conduct is unlawful and with intent to do something the law forbids, that is to say, with bad purpose to disobey or disregard the law.

The defendant's conduct was not willful if it was due to negligence, inadvertence, mistake or the result of good faith and misunderstanding of the requirements of the law. In this connection it is up to you to decide whether the defendant acted in good faith, that is, whether he sincerely misunderstood the requirements of the law or whether he knew what he was required to do and deliberate[ly] did not do so.

J.A. 435-36. We conclude that the district court adequately instructed the jury that in order to conclude that Beidler "willfully" violated the antistructuring laws, it had to find that Beidler acted with knowledge that his conduct was illegal. See United States v. Griffin, 84 F.3d 912, 925-26 (7th Cir.), cert. denied, 117 S. Ct. 495 and 117 S. Ct. 536 (1996). Accordingly, the court did not err in refusing to give Beidler's proffered instruction.

6

inferences from the evidence of defendant's conduct." Ratzlaf, 510 U.S. at 149 n.19.

After Ratzlaf, the circuit courts of appeals have struggled with the quantum of proof beyond mere structuring that is sufficient to establish knowledge of illegality. There is general agreement that special knowledge conferred by a defendant's professional status is evidence that the defendant knew of the illegality of structuring a currency transaction. See United States v. Simon, 85 F.3d 906, 911 (2d Cir.) (holding that the defendant's status as a licensed stockbroker who occasionally was required to file CTRs allowed an inference that the defendant knew structuring was illegal), cert. denied, 117 S. Ct. 517 (1996); United States v. Tipton, 56 F.3d 1009, 1013 (9th Cir. 1995) (observing that evidence that the defendants were bank employees and had received training about currency reporting laws would permit a jury to conclude that they knew it was unlawful to assist others in structuring transactions), cert. denied, 116 S. Ct. 773 (1996); United States v. Retos, 25 F.3d 1220, 1231 (3d Cir. 1994) (noting that the evidence was sufficient to sustain a conviction for structuring when the evidence included defendant's status as an attorney); see also Wynn, 61 F.3d at 928 (citing Retos with approval). Additionally, at least one court has indicated that evidence that the structuring is designed to conceal some other illegal activity may support an inference that the defendant knew his conduct was unlawful. See United States v. Hurley, 63 F.3d 1, 16 (1st Cir. 1995) (holding that sufficient evidence supported a conclusion that the defendants knew structuring was illegal when they knew that the money laundering accomplished through the structured transactions was illegal because a "context . . . saturated with consciousness of illegality" is relevant to a defendant's state of mind), cert. denied, 116 S. Ct. 1322 (1996). But see Wynn, 61 F.3d at 927-28 (acknowledging the Government's reliance on evidence that the purpose of the structured transactions was to launder money but concluding that the evidence did not support a conclusion that the defendant knew that structuring was illegal).

The circuit courts of appeals are divided, however, with respect to the question of whether a defendant's attempts to conceal the structuring of transactions may suffice to prove knowledge of illegality. See Ismail, 97 F.3d at 57-58. The majority of circuit courts of appeals holds that evidence of concealment is sufficient, alone or in conjunc-

7

tion with other evidence, to support an inference that the defendant knew that structuring was illegal. For example, in United States v. Marder, 48 F.3d 564 (1st Cir.), cert. denied , 115 S. Ct. 1441 (1995), the evidence related to the structuring count established that the defendant provided his wife with $11,460 in cash and instructed her to purchase cashier's checks in the amounts of $5,000, $3,960, and $2,500 from three different banks. Id. at 574. The First Circuit concluded that this evidence, by itself, was sufficient to establish that the defendant knew structuring was illegal because, by structuring the transaction to a greater degree than the minimum necessary to avoid the filing of a CTR, he evinced an intent to conceal his activities:

> While it certainly would make sense for a person cognizant of the reporting requirement but unaware of the illegality of structuring to make two separate purchases at two separate banks--e.g., a purchase of $5,000 and a purchase of $6,460 --in order to obtain $11,460 without triggering a report to the IRS, the fact that defendant instructed his wife to make three separate purchases at three separate banks suggests that defendant had a purpose beyond evasion of the reporting requirement: concealment of his structuring. And proof of concealment tends to prove knowledge of illegality.

Id. Similarly, the Second Circuit has held that "when the method of structuring suggests a significant effort not only to avoid the bank reporting requirements but to conceal the currency structuring itself from authorities, Ratzlaf's requirement of[proof that the defendant knew structuring was illegal] is satisfied." Simon, 85 F.3d at 910. Other courts have concluded that evidence of a defendant's attempt to conceal the structuring activity, when considered along with other evidence, is sufficient to support a conclusion that the defendant knew structuring was illegal. See Walker, 25 F.3d at 543, 548 n.8 (stating that evidence of "intricate and odd structuring of transactions"-- including the purchase of a condominium with 76 cashier's checks, each for less than $10,000, that had been purchased at multiple banks and currency exchanges--supported a conclusion that the defendants knew that structuring was illegal when combined with other evidence); see also Tipton, 56 F.3d at 1013 (stating that evidence that the defendants attempted to conceal their activity, among other factors, supported conviction for structuring); United States v. Oreira, 29 F.3d

8

185, 187, 188 n.5 (5th Cir. 1994) (concluding that evidence, including evidence that defendants deposited cash in several different accounts held at numerous banks, could support a conclusion that the defendants knew structuring was illegal). However, the District of Columbia Circuit has stated that it rejects the rule set forth in Marder and Walker. See Wynn, 61 F.3d at 928.

We think that the majority rule is the better one. Willfulness is rarely proven by direct evidence; rather, the factfinder must "`draw[ ] reasonable inferences from the available facts.'" Marder, 48 F.3d at 574 (quoting United States v. Bank of New England, N.A., 821 F.2d 844, 854 (1st Cir. 1987)); see Ratzlaf, 510 U.S. at 149 n.19. This is so because willfulness concerns the defendant's state of mind, which --unless the defendant admits to an intent to violate the law--can only be inferred from conduct. See Simon, 85 U.S. at 910; Marder, 48 F.3d at 574. Moreover, the Supreme Court has long recognized that willfulness may be inferred from evidence of attempts to conceal illegal conduct. See Holland v. United States , 348 U.S. 121, 139 (1954); Spies v. United States, 317 U.S. 492, 499 (1943). Accordingly, we hold that evidence that a defendant has structured currency transactions in a manner indicating a design to conceal the structuring activity itself, alone or in conjunction with other evidence of the defendant's state of mind, may support a conclusion that the defendant knew structuring was illegal.**5**

_____

**5 Ismail** does not require a contrary holding. There, the evidence established that the defendants began structuring their transactions only after they were advised of the currency reporting requirements by a bank employee. See Ismail, 97 F.3d at 53. Subsequently, the defendants regularly made deposits in amounts just under $10,000, often dealing with the very bank employee who had informed them of the reporting requirement in the first place. See id. at 53, 57 n.1. Moreover, the defendants "were familiar figures at the bank, and never acted surreptitiously when they came to make deposits." Id. at 57 n.1. In short, the evidence presented by the Government in Ismail proved nothing more than that the defendants knew of the reporting requirements and structured their transactions so as to evade them. Because there was no evidence that the defendants knew their conduct was illegal beyond the mere acts of structuring, reversal of the convictions was required under Ratzlaf. Thus, although the majority opinion in Ismail includes an extended discussion

9

B.

We now turn to the question of whether the evidence presented in this case is sufficient to support Beidler's conviction. The Government presented no evidence that Beidler possessed a particular familiarity with currency reporting requirements as a result of his status as a real estate agent. See Simon, 85 F.3d at 911; Tipton, 56 F.3d at 1013. Additionally, although the record contains evidence that Wood was involved in illegal activities and that Beidler may have been aware of those activities, the Government does not argue that this evidence supports Beidler's conviction. Cf. Hurley, 63 F.3d at 16. Accordingly, the only question is whether the evidence that Beidler attempted to conceal his structuring is sufficient to support a conclusion that Beidler knew structuring was illegal. We conclude that it is.

Although Beidler admitted that he received large sums of cash from Wood, he never deposited more than $5,000 at any one time, and most often made deposits of $4,000 or less. Moreover, Beidler made the deposits at different branches of multiple banks, often travelling to several different branches in the same day. All in all, the Government's evidence showed that during the period when Wood was providing financing for the Wellington Forest project, Beidler made 34 cash deposits, totalling $116,500,[6] at 10 different branches of three different banks. If Beidler's only intent was to avoid the filing of a CTR, 12 separate deposits would have served his purpose just as well. Based upon the fact that Beidler made more deposits than the minimum necessary to evade the reporting requirements, the jury reasonably could have inferred that Beidler intended to conceal his structuring because he knew structuring was illegal. See Simon, 85 F.3d at

_____

concerning the type of evidence that may be employed by the Government to prove knowledge of illegality, the question presented to us today was not before the court in that case. See id. at 57 (noting that "[w]e need not here determine if evidence of elaborate efforts to conceal structuring is probative of knowledge that structuring violates the law").

[6] The parties agree that the amount of financing supplied by Wood was $100,000. The record does not contain an explanation of the discrepancy between the Government's evidence of the deposits made by Beidler and the evidence regarding the amount of funds received from Wood.

10

910; <u>Marder</u>, 48 F.3d at 574. Additionally, the jury--the sole judge of the credibility of the witnesses--was entitled to reject Beidler's explanation of the transactions and to consider its rejection of Beidler's story as positive evidence of his guilt. <u>See Burgos</u>, 94 F.3d at 868. We conclude that this evidence is sufficient to support a determination that Beidler knew that structuring of currency transactions was illegal.

III.

We hold that evidence concerning a defendant's attempt to conceal the structuring of currency transactions may suffice to prove that the defendant knew his conduct was illegal. Here, the evidence presented by the Government of Beidler's efforts to conceal his structuring of currency transactions was sufficient to justify a determination beyond a reasonable doubt that Beidler knew his activities were unlawful. Accordingly, we affirm.**7**

<u>AFFIRMED</u>

_____

**7** Having carefully considered Beidler's remaining allegations of error, we conclude that they are without merit.