# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

SARAH H. PETERSON,

*Defendant-Appellant.*

No. 09-4166

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, Senior District Judge.
(1:08-cr-00348-TSE-1)

Argued: March 24, 2010

Decided: June 17, 2010

Before SHEDD and AGEE, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Hamilton wrote
the opinion, in which Judge Shedd and Judge Agee joined.

## COUNSEL

**ARGUED**: Robert Michael Tyler, MCGUIREWOODS, LLP,
Richmond, Virginia, for Appellant. Gordon D. Kromberg,
OFFICE OF THE UNITED STATES ATTORNEY, Alexan-
dria, Virginia, for Appellee. **ON BRIEF:** E. Duncan Getchell,

Jr., Erin M. Sine, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

HAMILTON, Senior Circuit Judge:

Section 2S1.3(b)(2) of the United States Sentencing Guidelines provides a two-level enhancement for certain monetary transaction offenses if the defendant committed "the offense as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period." U.S. Sentencing Guidelines Manual (USSG) § 2S1.3(b)(2). The issue presented in this appeal is whether the district court erred at sentencing when it enhanced the offense level of the appellant, Sarah Hiram Peterson (Peterson), under this Guidelines section after Peterson pleaded guilty to structuring transactions to evade financial reporting requirements, 31 U.S.C. § 5324(a)(3). Finding no error, we affirm.

I

Peterson, an Iranian-American, married her second husband, Donald Peterson (Donald), in October 1998. They separated in June 2004 and ultimately divorced in August 2007. As part of the divorce settlement, Peterson was to pay Donald $500,000.00, of which $100,000.00 was to be paid from cash Peterson had stored in a safe deposit box. The money in Peterson's safe deposit box was proceeds derived from her operation of multiple chiropractic practices in Northern Virginia.

In an attempt to evade the currency reporting requirements set forth in 31 U.S.C. § 5313(a),[1] Peterson made eleven sepa-

---

[1] Under 31 U.S.C. § 5324(a), a person may not structure transactions "for the purpose of evading the reporting requirements of [31 U.S.C. §]

rate deposits of $9,500.00 or less into her Wachovia bank account between August 8 and August 29, 2006. According to Peterson, she structured the $101,200.00 in deposits on the instructions of Donald, a stockbroker, who advised her to avoid the burdensome paperwork and to avoid potentially making United States law enforcement authorities suspicious about an Iranian-American depositing such a large sum in a bank account.

On October 2, 2008, the government filed a one-count criminal information charging Peterson with structuring transactions to evade reporting requirements, 31 U.S.C. § 5324(a)(3). On the same day, Peterson pleaded guilty to that offense.

In preparation for sentencing, a presentence report was prepared by a United States probation officer. The probation officer set Peterson's base offense level at 6, USSG § 2S1.3(a)(2). The probation officer added eight levels pursuant to USSG § 2B1.1(b)(1)(E), because the structured amount was more than $70,000.00 but less than $120,000.00. Two more levels were added pursuant to USSG § 2S1.3(b)(2), because, according to the probation officer, Peterson's offense was committed as part of a pattern of unlawful activity involving more than $100,000.00 in a twelve-month period. Following a three level reduction for acceptance of responsibility, USSG § 3E1.1(a) & (b), Peterson's total offense level was 13. Coupled with a criminal history category of II,[2] the probation officer set Peterson's sentencing range at 15 to 21 months' imprisonment.

5313(a)" or applicable regulations. By regulation, financial institutions must report all currency transactions involving more than $10,000, subject to certain exceptions which are not applicable here. *See* 31 C.F.R. § 103.22(b)(1).

[2]Peterson had prior convictions for food stamp fraud and for making a false insurance claim.

At the sentencing on January 23, 2009, Peterson challenged the USSG § 2S1.3(b)(2) enhancement, contending that the enhancement did not apply because her structuring offense did not involve "a pattern of unlawful activity," which is defined as "at least two separate occasions of unlawful activity . . . , without regard to whether any such occasion occurred during the course of the offense or resulted in a conviction for the conduct that occurred on that occasion." USSG § 2S1.3, comment. (n.3). According to Peterson, if the structured money came from one source, here her safe deposit box, there could be only one offense, *see United States v. Davenport*, 929 F.2d 1169, 1172 (7th Cir. 1991) (holding that the structuring itself, and not each individual deposit, is the unit of prosecution in a structuring offense), and thus no pattern of unlawful activity, regardless of the number of deposits or the amount ultimately deposited. The propriety of the USSG § 2S1.3(b)(2) enhancement was extremely germane, because it not only affected whether Peterson's sentencing range would be enhanced pursuant to that section, but also because it affected whether she was entitled to the safe harbor provision in USSG § 2S1.3(b)(3). Pursuant to the safe harbor provision, Peterson's offense level would be reduced to level 6 if, among other things, the enhancement of USSG § 2S1.3(b)(2) did not apply.

The district court determined that Peterson's offense was committed as part of a pattern of unlawful activity involving more than $100,000.00 in a twelve-month period; so USSG § 2S1.3(b)(2) applied, and, as a result, the safe harbor provision in USSG § 2S1.3(b)(3) did not apply. The district court stated that the USSG § 2S1.3(b)(2) enhancement should not turn on the number of different places the defendant had stored her cash, reasoning such a result "bizarre and not intended." (J.A. 110). Rather, according to the district court, the pattern of unlawful activity could involve multiple deposits coming from the same source of funds, provided each such deposit could be prosecuted as unlawful in its own right, though not necessarily in separate counts. As a result, the dis-

trict court determined Peterson's offense level to be 13, and her sentencing range to be 15 to 21 months' imprisonment. At that time, Peterson was sentenced to, among other things, twelve months' imprisonment.

On January 27, 2009, the district court entered an order vacating the sentence imposed and ordered the parties to reappear for sentencing on January 30, 2009, out of concern that it did not properly apply the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007). At the January 30, 2009 sentencing, after consideration of the sentencing range and the other factors set forth at 18 U.S.C. § 3553(a), the district court sentenced Peterson to, *inter alia*, eight months of community confinement with work release. Peterson appeals, challenging the district court's application of the USSG § 2S1.3(b)(2) enhancement.

II

For sentencing purposes, structuring offenses are covered by USSG § 2S1.3. The base offense level for a structuring offense is 6, plus the number of levels from the Theft Table at USSG § 2B1.1. USSG § 2S1.3(a)(2). After the base offense level is calculated, specific offense characteristics come into play. Two levels are added if (1) the defendant knew or believed that the structured funds were proceeds of unlawful activity or were intended to promote such activity or (2) the offense involved bulk cash smuggling. USSG § 2S1.3(b)(1). Moreover, two levels are added if the defendant committed the structuring offense "as part of a pattern of unlawful activity involving more than $100,000 in a 12-month period." USSG § 2S1.3(b)(2). A pattern of unlawful activity is defined as "at least two separate occasions of unlawful activity . . . , without regard to whether any such occasion occurred during the course of the offense or resulted in a conviction for the conduct that occurred on that occasion." USSG § 2S1.3, comment. (n.3). Finally, an offense level is reduced to offense level 6 under the safe harbor provision, provided: (1) subsec-

tions (b)(1) and (b)(2) do not apply; (2) the defendant did not act with reckless disregard of the source of the structured funds; (3) the funds were the proceeds of lawful activity; and (4) the funds were used for a lawful purpose. USSG § 2S1.3(b)(3).

Peterson argues that, because, per *Davenport*, she committed only one chargeable offense of structuring, her offense was not part of a pattern of unlawful activity under USSG § 2S1.3(b)(2). More specifically, she argues that, when she made the eleven deposits, she engaged in only *one* occasion of unlawful activity, not multiple occasions of unlawful activity as required by USSG § 2S1.3(b)(2). This argument is premised on the following language in *Davenport*, "[t]he statute does not forbid the making of deposits. It forbids the structuring of a transaction." 929 F.2d at 1171. Consequently, Peterson claims she was entitled to the safe harbor provision in USSG § 2S1.3(b)(3), such that her total offense level should have been 4 (offense level 6 minus a two-level reduction for acceptance of responsibility).

The pattern of unlawful activity enhancement set forth in USSG § 2S1.3(b)(2) applies in at least three situations, which is not surprising since USSG § 2S1.3 applies to a variety of monetary transaction offenses. First, it applies when the occasions of unlawful activity involving more than $100,000.00 are separate from the structuring offense itself. *Redefining the Bank Secrecy Act: Currency Reporting and the Crime of Structuring*, 50 Santa Clara L. Rev. 407, 486 (2010). For example, structuring is separate from income tax evasion when the defendant structures a series of deposits to avoid paying income taxes. *Id.* Second, the enhancement applies when the defendant engages in what has been coined as "'serial structuring.'" *Id.* Serial structuring refers to a pattern of structuring activity involving more than $100,000.00 in any twelve-month period, and applies "even in the absence of other criminal activity." *Id.* Typically, serial structuring involves a series of related currency transaction report viola-

tions. *See, e.g.*, *United States v. St. Michael's Credit Union*, 880 F.2d 579, 587 (1st Cir. 1989) (holding that, to establish a pattern of unlawful activity in a case involving currency transaction report violations, the government must prove that the currency transaction report violations were both repeated and related to one another). Finally, the pattern of unlawful activity enhancement applies when the structuring offense itself involves a pattern of unlawful activity. This situation is akin to serial structuring, but typically involves a defendant who structures a series of deposits totaling in excess of $100,000.00 to avoid triggering the bank's duty to report (perfect structuring) or in an attempt to defeat the bank's responsibility to report (imperfect structuring). This final situation recognizes that some structuring offenses are part of a pattern of unlawful activity, while others are not. For example, a structurer who takes $9999.00 from a safe deposit box containing $101,000.00 and is arrested on her first trip to the bank to deposit the money has not, as the government acknowledged at oral argument, engaged in a pattern of unlawful activity under USSG § 2S1.3(b)(2), even though she may have intended to make ten additional deposits. Similarly, a structurer who has $101,000.00 in a bedroom closet, makes the first deposit of $9999.00, and returns home only to find the remainder of the money stolen has not engaged in a pattern of unlawful activity under USSG § 2S1.3(b)(2). The same cannot be said for the structurer who is able to make the other eleven deposits before getting caught. Such a structurer has committed a series of acts that constitute a pattern of unlawful activity.

Such a construction of USSG § 2S1.3(b)(2) is consistent with Application Note 3 to USSG § 2S1.3. In Application Note 3, "pattern of unlawful activity" is defined as "at least two separate occasions of unlawful activity involving a total amount of more than $100,000 in a 12-month period, without regard to whether any such occasion occurred during the course of the offense or resulted in a conviction for the conduct that occurred on that occasion." USSG § 2S1.3, com-

ment. (n.3). As a result, "unlawful activity" that did not occur during the course of the offense of conviction may trigger the enhancement, but, in addition, such unlawful activity that occurs during the course of the offense of conviction may trigger it as well. Thus, the "pattern of unlawful activity" can consist solely of conduct that occurred during the course of the offense, that is, the structured transactions that occurred during the course of the structuring offense.

Our reading of USSG § 2S1.3(b)(2) is also consistent with the overall framework of USSG § 2S1.3. Section § 2S1.3 sets up a graduated punishment scheme that punishes a defendant primarily on the amount of money involved in the monetary transaction violation(s) and affords leniency for the defendant who engages in isolated monetary transactions that do not cross the $100,000.00 threshold. Generally, the larger the amount of money involved in the monetary transaction violation(s), the higher the offense level. However, the safe harbor provision essentially establishes a very narrow opening for a defendant whose offense is either made up of an *isolated* monetary transaction or several monetary transactions that do not cross the $100,000.00 threshold. A defendant who engages in multiple transactions and crosses the $100,000.00 threshold simply cannot enter that narrow opening.

Moreover, acceptance of Peterson's argument leads to absurd results. For example, under her reading of USSG § 2S1.3(b)(2), defendants essentially engaging in the same conduct would receive dramatically different sentences. For example, a defendant who has $101,000.00 in a safe deposit box and, within a one-month month period, breaks it up into eleven deposits under $10,000.00 is entitled to the safe harbor provision and receives an offense level of 6. However, a defendant who has $52,000.00 in cash on Day One and breaks it up into six deposits under $10,000.00 over the first month but then acquires another $49,000.00 on Day Five and breaks that amount into five deposits under $10,000.00 during that same month would not be entitled to the safe harbor provi-

sion, but would be assigned an offense level of 14. In both instances, the defendant structured the same amount of money in the course of eleven transactions over roughly the same period of time. Yet, according to Peterson, the second instance would constitute a "pattern" subject to the enhancement in USSG § 2S1.3(b)(2), but the first would not. We simply cannot embrace such reasoning.

The absurdity does not end there. Embracing Peterson's reading of USSG § 2S1.3(b)(2) also needlessly leads to the divergent sentences for imperfect structuring offenses on the one hand and perfect structuring offenses on the other. An imperfect structurer violates § 5324(a)(1) when multiple deposits are made in the same or different bank accounts at the same bank on the same day such that the total of the deposits aggregates to more than $10,000.00. Each day's deposits that exceed the $10,000.00 threshold constitute a separate violation of § 5324(a)(1) because the imperfect structurer has attempted to cause the bank to fail to file the necessary currency transaction report. Thus, under Peterson's reading of USSG § 2S1.3(b)(2), the imperfect structurer who structures $101,000.00 through ten deposits over ten days would receive an offense level of 14, but the perfect structurer who structures $101,000.00 through eleven deposits on eleven separate days would receive an offense level of 6 under the safe harbor provision. Again, we simply cannot embrace such anomalies.

At the end of the day, Peterson's argument rests on the statements in *Davenport* positing that a deposit simply is not an unlawful act; therefore, according to Peterson, no deposit can be viewed as an occasion of unlawful activity under USSG § 2S1.3(b)(2). We are reluctant to take issue with the decision in *Davenport* because the court there addressed the appropriate unit of prosecution in a § 5324(a)(3) structuring case; it did not address whether the defendant engaged in a pattern of unlawful activity under USSG § 2S1.3(b)(2). There are sound reasons supporting the principle that the govern-

ment should refrain from bringing a separate structuring count for each deposit, especially in cases involving numerous deposits over an extended period of time. *Cf. United States v. Tran Trong Cuong*, 18 F.3d 1132, 1142 (4th Cir. 1994) (reversing convictions in prescription drug distribution case where government obtained an indictment containing 136 counts, of which eighty counts were not supported by sufficient evidence; court noted that "[s]uch tactics invite a jury to find guilt by association or as a result of a pattern"). However, for purposes of our discussion here, we are of the opinion that each separate deposit is an unlawful act, as the government could base a prosecution on any one *or* all of the deposits, *see* 31 C.F.R. § 103.11(gg) (defining structuring as one or a series of transactions). In this regard, a structuring offense is akin to conspiracy (or other unlawful schemes), where the unlawful acts are charged as overt acts in the overall conspiracy. Put simply, because Peterson made more than one unlawful deposit and the total of her eleven deposits in a twelve-month period exceeded $100,000.00, she committed her offense as part of a pattern of unlawful activity under USSG § 2S1.3(b)(2).

### III

Peterson raises two additional arguments which she contends should be resolved in her favor. First, she contends that USSG § 2S1.3(b)(2) only applies to willful violations of § 5324(a)(3). We reject this argument for the simple reason that USSG § 2S1.3(b)(2) contains no willfulness component. Second, Peterson contends the rule of lenity should apply in this case. We reject this contention because we find no ambiguity in USSG § 2S1.3(b)(2). *See United States v. Helem*, 186 F.3d 449, 455 (4th Cir. 1999) ("The rule of lenity, which requires the court to strictly construe criminal statutes, does not apply in this case because the statute is not ambiguous.").

In sum, the district court did not err when it determined that Peterson's structuring offense was committed as part of a pat-

tern of unlawful activity involving more than $100,000.00 in a twelve-month period, such that the USSG § 2S1.3(b)(2) enhancement applied and, as a result, the safe harbor of USSG § 2S1.3(b)(3) did not apply.

*AFFIRMED*