**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 10-4912**

—————————

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

JOSE MARCIAL RAMOS-HERNANDEZ,

        Defendant – Appellant.

—————————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris, Senior District Judge. (1:09-cr-00549-JCC-1)

—————————

Submitted: April 19, 2011         Decided: May 13, 2011

—————————

Before SHEDD, DUNCAN, and DAVIS, Circuit Judges.

—————————

Affirmed by unpublished per curiam opinion.

—————————

William B. Cummings, WILLIAM B. CUMMINGS, PC, Alexandria, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Jessica W. Knight, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jose Marcial Ramos-Hernandez appeals from his convictions for various cocaine offenses and his resulting 120-month sentence. On appeal, he challenges the sufficiency of the evidence supporting two of his convictions and asserts that the district court relied on clearly erroneous factual findings in determining his sentence. We affirm.

I.

A federal grand jury returned an indictment charging Jose Marcial Ramos-Hernandez with conspiracy to distribute 500 grams or more of cocaine and three counts of distribution of cocaine. After pleading not guilty, Ramos-Hernandez consented to a bench trial. The evidence at trial showed that, over the course of many transactions, undercover Detective Rafael Fortiz purchased various items from Santos Rene Alfaro Rubio ("Rene"), including stolen items, guns, and drugs. Specifically, Rene sold cocaine to Fortiz on March 31 (one ounce), April 9 (one ounce), and May 26, 2009 (four ounces). In addition, Rene attempted to sell cocaine to Fortiz on May 19. At the May 26 sale, Rene and Ramos-Hernandez were arrested.

Rene pled guilty to offenses arising from these transactions and testified at Ramos-Hernandez's trial. He stated that he obtained the cocaine sold to Fortiz from

2

Ramos-Hernandez. In turn, Ramos-Hernandez obtained the cocaine from Nelson Rivas Palacios, also known as Chepe. While evidence showed that Rene initially told Fortiz that his supplier for the March 31 transaction was not Ramos-Hernandez, Rene confirmed at trial that the only source he had for all the charged transactions was Ramos-Hernandez.

With regard to the proposed May 19 sale, Rene testified that he ordered sixteen ounces of cocaine from Ramos-Hernandez, who indicated he could deliver it. However, a lack of police resources caused Fortiz to cancel the sale and reschedule for May 26. On May 26, Ramos-Hernandez was only able to get four ounces from Chepe.

In a post-arrest interview, Ramos-Hernandez admitted providing Rene with cocaine for each of the transactions. Regarding the May 19 proposed deal, Ramos-Hernandez admitted that he saw the sixteen ounces originally scheduled to be delivered. However, Ramos-Hernandez testified at trial that he did not provide Rene with any cocaine prior to May 26. He claimed that he participated in the May 26 sale as a favor to Rene. He also testified that Chepe dealt between fifteen and twenty ounces of cocaine a week.

The court found Ramos-Hernandez guilty on all four counts. The court explicitly found Ramos-Hernandez to not be credible, based on both his substantive testimony and his

demeanor. The court also found Ramos-Hernandez responsible for 18 ounces (or 510 grams) of cocaine for purposes of the conspiracy count. The court came to this amount by counting the one-ounce transactions on May 31 and April 9, and attributing a total of sixteen ounces to Ramos-Hernandez for the aborted May 19 and completed May 26 transactions.

The presentence report ("PSR") attributed Ramos-Hernandez with 3.9123 kilograms of cocaine, based upon the eighteen ounces found by the court as well as fifteen ounces a week for the time period between the first and the last transaction. The fifteen-ounce amounts were based on co-conspirator Chepe's sales, about which Ramos-Hernandez admitted knowing. The PSR then calculated a Guidelines range of 151 to 188 months in prison.

At sentencing, Ramos-Hernandez, through counsel, challenged the drug quantity and sought either a departure or a variance sentence, admitting that "the formal application of the guidelines are accurate." The court held Ramos-Hernandez responsible for the two one-ounce distributions, the sixteen promised ounces, and four ounces from the final distribution. Although twenty-two ounces calculates to 623 grams, the court calculated the total to be 730 grams. With this new drug amount, Ramos-Hernandez's Guidelines range was 97 to 121 months. Neither party objected.

4

The court sentenced Ramos-Hernandez to 120 months in prison. The court noted that, even if Ramos-Hernandez's Guidelines range had remained at 151-188 months, the court would have imposed a variance sentence of 120 months, as the court considered that sentence as "adequate . . . for deterrence and punishment purposes" and proper comparatively to Rene's 42-month sentence. The court then stated that the sentence reflected the nature, circumstances, and seriousness of the offense and reflected the history and characteristics of Ramos-Hernandez. Specifically, the court recognized Ramos-Hernandez's argument that his overstated criminal history merited a variance and rejected it.

## II.

Ramos-Hernandez contends that the evidence is insufficient to support his conviction for the March 31 sale based on Rene's testimony that he initially told Fortiz that he had a different supplier for that transaction. "A defendant challenging the sufficiency of the evidence to support his conviction bears a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation marks omitted). We will uphold the jury's verdict "if, viewing the evidence in the light most favorable to the [G]overnment, it is supported by substantial evidence." United States v. Reid,

5

523 F.3d 310, 317 (4th Cir. 2008). We do not weigh evidence or review witness credibility. United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Rather, it is the role of the fact-finder to judge the credibility of witnesses, resolve conflicts in testimony, and weigh the evidence. United States v. Manbeck, 744 F.2d 360, 392 (4th Cir. 1984).

Ramos-Hernandez's challenge to the sufficiency of the evidence is essentially a credibility challenge. Although Rene testified at trial that Ramos-Hernandez was his only supplier, Ramos-Hernandez argues that Rene's testimony is not worthy of belief given his prior inconsistent statement. However, it was the judge's role to assess witness credibility and resolve conflicts in testimony. As we will not review the credibility of witnesses or re-weigh their testimony on appeal, Ramos-Hernandez's claim is without merit.[1]

---

[1] Ramos-Hernandez also asserts that the evidence was insufficient to show that the conspiracy involved more than 500 grams of cocaine, because the one ounce from the March 31 sale should be removed from the calculation based upon Rene's inconsistent statements. However, because the court chose to credit Rene's in-court statements, the March 31 amount was properly included, and this credibility determination is not reviewable on appeal.

Ramos-Hernandez contends that the district court arrived at a clearly erroneous drug amount. Specifically, as discussed above, the drug amounts found by the court add up to only 623 grams, rather than the 730 cited by the district court. Further, Ramos-Hernandez challenges the court's inclusion of both the sixteen ounces from the aborted sale and the four ounces from the replacement sale. However, Ramos-Hernandez admits that, whether the correct amount was 510, 623, or 730, the Guidelines calculation would be the same.

Ramos-Hernandez then contends that the district court's "significant procedural error" or "clear error" infected the fairness of the rest of the sentencing hearing and caused the district court to impose a higher sentence than it would have had it realized the correct drug amount. According to Ramos-Hernandez, the excess amount of cocaine discouraged the district court from reducing the Guidelines range, imposing a sentence at the bottom of the Guidelines range, or choosing to impose a sentence below the Guidelines range.[2]

---

[2] The Government asserts that the district court was faced with an applicable five-year (120-month) statutory minimum sentence, effectively negating many of Ramos-Hernandez's claims. However, a five-year sentence correlates to only sixty months in prison.

7

We review a sentence imposed by a district court for reasonableness, applying an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41 (2007). Reliance on "clearly erroneous facts" will constitute "significant procedural error." Id. at 51. Assuming Ramos-Hernandez properly requested a variance sentence below his advisory Guidelines range, his claim that the district court relied on clearly erroneous facts is reviewed for harmless error. Puckett v. United States, 129 S. Ct. 1423, 1432 (2009) (noting that procedural errors at sentencing are "routinely subject to harmlessness review"); see also United States v. Lynn, 592 F.3d 572, 576 (4th Cir. 2010) (holding that preserved claims are reviewed for abuse of discretion, and if we find abuse, reversal is required unless we conclude the error was harmless). Procedural error is harmless if we can say with "fair assurance" that the district court's explicit consideration of the appropriate facts would not have affected the sentence imposed. See United States v. Boulware, 604 F.3d 832, 838 (4th Cir. 2010).

We find that the district court's error in this case was merely harmless. First, the district court did not commit clear error by holding Ramos-Hernandez responsible for both the sixteen ounces from the aborted May 19 sale and the four ounces from the completed May 26 sale. There was testimony that the

8

sixteen ounces were available for delivery on May 19, and no testimony that the four ounces were somehow part of the original sixteen ounces. It is not clear error to find one amount (510 grams) beyond a reasonable doubt and a larger amount by a preponderance of the evidence. Thus, the proper amount, given the district court's findings, should have been 623 grams rather than the erroneous 730 grams stated by the district court.

Nonetheless, the record does not find any support for the conclusion that the 107-gram difference affected the district court's consideration of the appropriate sentence. First, Ramos-Hernandez's offense level applied to cocaine amounts from 500 grams to 2000 grams (two kilograms). U.S. Sentencing Guidelines Manual § 2D1.1(c)(7) (2009). Thus, both 623 and 730 fall into the low end of the offense level, and it is difficult to discern why the district court would treat them differently. Second, the district court was well aware of the amount of drugs involved and the extent of Ramos-Hernandez's participation in the conspiracy, given that the court presided over the bench trial. As such, the court was not likely to be depending heavily on the actual gram count for determination of the final sentence. Third, the court stated that 120 months was the appropriate sentence regardless of the Guidelines range. Fourth, when the court was listing the reasons for its chosen sentence, including crafting an appropriate sentence compared to

9

Ramos-Hernandez's co-conspirator and affording adequate deterrence, the court did not mention the 730 grams as an aggravating factor necessitating the chosen sentence. Finally, there is simply no evidence in the record that the district court considered the 730 gram finding (as opposed to the 510 gram finding after trial) to be an especially compelling factor. The court only mentioned the drug amount when determining the offense level, which Ramos-Hernandez agrees was correctly calculated.

Based on the foregoing, we find that the court's mathematical error was harmless. The record is clear that the court considered 120 months to be the appropriate sentence, regardless of the drug amount involved. Accordingly, we affirm Ramos-Hernandez's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

10