Filed: November 19, 2012

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4910(L)**
(7:10-cr-00067-SGW-1)

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

YOUSSEF HAFEZ ABDELBARY,

Defendant – Appellant.

**No. 11-5000**
(7:10-cr-00067-SGW-1)

UNITED STATES OF AMERICA,

Plaintiff – Appellant,

v.

YOUSSEF HAFEZ ABDELBARY,

Defendant – Appellee.

O R D E R

The Court amends its opinion filed October 31, 2012, as follows:

On page 12, line 13 of text -- the date "June 27" is corrected to read "June 21."

For the Court – By Direction


/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 11-4910**

─────────────

UNITED STATES OF AMERICA,

          Plaintiff – Appellee,

    v.

YOUSSEF HAFEZ ABDELBARY,

          Defendant – Appellant.

─────────────

**No. 11-5000**

─────────────

UNITED STATES OF AMERICA,

          Plaintiff – Appellant,

    v.

YOUSSEF HAFEZ ABDELBARY,

          Defendant – Appellee.

─────────────

Appeals from the United States District Court for the Western
District of Virginia, at Roanoke.   Samuel G. Wilson, District
Judge.  (7:10-cr-00067-SGW-1)

─────────────

Argued:  September 21, 2012     Decided:  October 31, 2012

─────────────

Before SHEDD, KEENAN, and THACKER, Circuit Judges.

─────────────

Affirmed in part, reversed in part, vacated in part, and remanded by unpublished opinion. Judge Shedd wrote the opinion, in which Judge Keenan and Judge Thacker joined.

---

**ARGUED:** Paul Graham Beers, GLENN, FELDMANN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant/Cross-Appellee. Joseph W. H. Mott, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Timothy J. Heaphy, United States Attorney, Terrance Jones, Third Year Law Intern, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

SHEDD, Circuit Judge:

A jury convicted Youssef Abdelbary of wire fraud, money laundering, currency structuring, bankruptcy fraud, and perjury. After trial, the district court granted Abdelbary's Rule 29 motion for judgment of acquittal on the wire fraud and money laundering convictions. Abdelbary raises various issues on appeal, including the sufficiency of the evidence on the currency structuring convictions and the order of restitution of attorney's fees to Jordan Oil Company, Inc., a victim of Abdelbary's crimes. The Government cross-appeals the district court's granting of the Rule 29 motion. For the following reasons, we affirm the currency structuring convictions, reverse the judgment of acquittal on the wire fraud and money laundering counts, vacate the award of restitution, and remand.

I.

A.

Youssef Abdelbary owned and operated a gas station and convenience store in Dublin, Virginia. Abdelbary leased the property and bought the gas he sold from Jordan Oil.[1] While running this business, Abdelbary used a branch of the Carter

---

[1] Between the time he opened the store in 2003 and 2006, Abdelbary dealt with a company affiliated with Jordan Oil. From September 2006, Abdelbary dealt with Jordan Oil. For simplicity, we refer to both of these companies as Jordan Oil.

Bank and Trust in Christiansburg, Virginia, where he made more than one hundred transactions, each involving more than $10,000. At the time of the first deposit of this size, Ralph Stewart, a local manager for Carter Bank and Trust, explained to Abdelbary about the currency transaction reports ("CTRs") that had to be filed on a transaction involving more than $10,000.

Abdelbary's relationship with Jordan Oil grew contentious in late 2007 and early 2008. When Abdelbary failed to make a payment due to Jordan Oil in early February 2008 for gas it had delivered, Jordan Oil ceased its deliveries to Abdelbary. Jordan Oil sued soon thereafter to collect the money that Abdelbary owed, which totaled about $250,000. The following day, Abdelbary began withdrawing currency in amounts less than $10,000. Over the next eight days, Abdelbary withdrew $59,879.31 from his account in eleven transactions. The litigation against Jordan Oil continued through the spring of 2008. Eventually, at the end of May, this litigation concluded when Jordan Oil obtained a final judgment against Abdelbary for $247,759.79 and Abdelbary's counterclaim was dismissed.

The next month, Abdelbary engaged in a series of credit card transactions in which he charged his personal credit cards at his store in multiple equal amounts in a span of a few minutes. The value of these purchases was credited to the account at Carter Bank and Trust that Abdelbary used for his

4

business, and he then withdrew this money, totaling $52,350, from that account in amounts less than $10,000.

Abdelbary met with a bankruptcy attorney in July 2008. Abdelbary initially told this bankruptcy attorney that he wanted to get back at Jordan Oil, but Abdelbary eventually concluded that he would file for bankruptcy. When Abdelbary submitted his bankruptcy filing, he denied having made any gifts within one year or having transferred any property within two years of the filing. Additionally, Abdelbary stated at the bankruptcy creditors' meeting that he had not transferred any assets to a family member. Despite these statements, Abdelbary had sent $76,000 to his brother in Egypt during those previous two years.

## B.

Based on these events, Abdelbary was charged in a twenty-count indictment with wire fraud, 18 U.S.C. § 1343, money laundering, 18 U.S.C. § 1956(a)(1)(B)(i) and (ii), currency structuring, 31 U.S.C. § 5324(a)(1) and (3) and § 5324(d), bankruptcy fraud, 18 U.S.C. § 152(3), and perjury, 18 U.S.C. § 1623. A jury convicted Abdelbary on all counts.

After the jury returned its verdict, the district court granted Abdelbary's Rule 29 motion for judgment of acquittal on the wire fraud and money laundering counts. The district court read the indictment as requiring the Government to prove beyond a reasonable doubt that Abdelbary incurred the credit card

5

charges in June 2008 with the intention of filing for bankruptcy and thus not repaying those companies. The district court held that the Government had not met this burden and therefore dismissed those counts of the indictment.

At sentencing, the district court sentenced Abdelbary to twenty-four months in prison. The court entered a criminal forfeiture judgment against Abdelbary for $112,229.31 and also ordered Abdelbary to pay restitution to Jordan Oil of $84,079.35 for attorney's fees incurred during the bankruptcy proceeding. The district court cited both the voluntary, 18 U.S.C. § 3663, and mandatory, 18 U.S.C. § 3663A, restitution provisions during the hearing without ever specifying the provision on which it was relying.

II.

We turn first to Abdelbary's claim that the evidence was insufficient to support the convictions for currency structuring. When a defendant challenges the sufficiency of the evidence to support his conviction, he "bears a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal quotation mark omitted). "In reviewing the sufficiency of the evidence supporting a criminal conviction, our role is limited to considering whether 'there is substantial evidence, taking the view most favorable to the Government, to

6

support it.'" Id. (quoting Glasser v. United States, 315 U.S. 60, 80 (1942)). The conviction must be upheld if, drawing all reasonable inferences in favor of the Government, "any reasonable trier of fact could have found [the defendant] guilty beyond a reasonable doubt." United States v. Allen, 491 F.3d 178, 185 (4th Cir. 2007) (alteration in original). Ultimately, "[r]eversal for insufficient evidence is reserved for the rare case 'where the prosecution's failure is clear.'" Beidler, 110 F.3d at 1067 (quoting Burks v. United States, 437 U.S. 1, 17 (1978)).

Under 31 U.S.C. § 5324(a), a person cannot structure currency transactions in such a way to avoid the reporting requirements of 31 U.S.C. § 5313(a) or § 5325. Federal law criminalizes two types of structuring. The first type, imperfect structuring, is prohibited by § 5324(a)(1) and proscribes conduct designed "to defeat the bank's responsibility to report." United States v. Peterson, 607 F.3d 975, 980 (4th Cir. 2010). The second type, perfect structuring, is prohibited by § 5324(a)(3) and criminalizes conduct designed "to avoid triggering the bank's duty to report." Id. The Government must prove three elements to support a conviction under either § 5324(a)(1) or § 5324(a)(3): (1) the defendant knowingly engaged in structuring; (2) the defendant knew of the reporting requirements under federal law; and (3) the purpose of the

7

transaction was to evade the requirements.  United States v.

$79,650.00 Seized from Bank of Am. Account Ending in 8247  at

Bank of Am., 7400 Little River Tpk., Annandale, Virginia, in the

Name of Girma Afework, 650 F.3d 381, 384 (4th Cir. 2011) (citing

the instructions of the trial judge without criticism); see also

United States v. MacPherson, 424 F.3d 183, 189 (2d Cir. 2005).

Abdelbary was charged with three counts of imperfect

structuring and two counts of perfect structuring based on the

withdrawals from February and June 2008.  Given our deferential

standard of review, we hold that the Government offered

sufficient evidence at trial from which a reasonable juror could

have found Abdelbary guilty.  First, Abdelbary clearly engaged

in structuring.  He made eleven withdrawals in amounts less than

$10,000 in February, totaling $59,879.31.  J.A. 1904.  Then, in

June, Abdelbary again made eleven withdrawals in amounts less

than $10,000, this time totaling $52,350.

Turning to the second element, the Government was required

to prove that Abdelbary knew of the reporting requirements under

federal law.  Despite Abdelbary's contention, the record

provides sufficient evidence from which a reasonable juror could

find that the Government met its burden.  Ralph Stewart

testified that he told Abdelbary about the CTRs and the filing

requirements.  J.A. 87.  Although Stewart never testified that

he told Abdelbary explicitly that the CTRs were required by

8

federal law and sent to the government, such testimony is not required for the jury to have convicted Abdelbary.[2] Carter Bank and Trust had filed 135 CTRs based on Abdelbary's transactions before Abdelbary abruptly began a new pattern of withdrawals involving less than $10,000. This attempt to hide illegal activity is itself evidence that Abdelbary knew his conduct was illegal. See Beidler, 110 F.3d at 1069 ("[W]e hold that evidence that a defendant has structured currency transactions in a manner indicating a design to conceal the structuring activity itself, alone or in conjunction with other evidence of the defendant's state of mind, may support a conclusion that the defendant knew structuring was illegal."). That Abdelbary may not have been as sophisticated a businessman or developed as complex a scheme to avoid the reporting requirement as other people convicted of currency structuring does not mean that Abdelbary was not engaged in illegal structuring. See, e.g., MacPherson, 424 F.3d at 194–95 (discussing the defendant's background as a businessman); Beidler, 110 F.3d at 1070

---

[2] Stewart testified that the CTR requirements have existed since the 1970s and that he tells customers about "the CTR filing requirements . . . as a routine matter." J.A. 87. From this testimony, a reasonable juror could have inferred that this conversation included Stewart mentioning that these "requirements" were imposed by federal law. Nevertheless, the record contains sufficient evidence to convict Abdelbary even without this inference.

9

(discussing the defendant's use of different branches of a bank to hide his transactions).[3]

Finally, the third element—that the purpose of the transactions was to avoid the reporting requirement—is established by the same evidence that satisfied the second element. The fact that Abdelbary began this pattern of withdrawals below the $10,000 threshold only after he encountered serious financial difficulty based on the dispute with Jordan Oil supports the conclusion that his purpose was to avoid the reporting requirements in order to hide his assets. See id. (discussing how a defendant's behavior can be evidence of his intent). Therefore, the record contains sufficient evidence to uphold the convictions on the currency structuring counts.

## III.

We next address the Government's cross-appeal of the district court's decision to grant Abdelbary's Rule 29 motion on the wire fraud and money laundering counts. When we review a

---

[3] Abdelbary argues that the Government admitted during its closing argument that Abdelbary did not know who gets the report. This statement is not an admission that Abdelbary was unaware of the legal reporting requirement. Read in the context of the defense's closing argument, this statement was simply an admission that Abdelbary did not know whether Jordan Oil could access the CTRs. J.A. 301–02, 314–15.

district court's decision to grant a motion for judgment of acquittal, we must reverse the district court's decision and reinstate the jury verdict "if there is substantial evidence, taking the view most favorable to the Government, to support [the jury verdict]." United States v. Mitchell, 177 F.3d 236, 238 (4th Cir. 1999) (quoting United States v. Steed, 674 F.3d 284, 286 (4th Cir. 1982)). Wire fraud has "two essential elements: (1) the existence of a scheme to defraud and (2) the use of . . . [a] wire communication in furtherance of the scheme." United States v. Curry, 461 F.3d 452, 457 (4th Cir. 2006). Money laundering has four elements: (1) the defendant conducted or attempted to conduct a financial transaction related to interstate commerce; (2) the transaction involved the proceeds of specified unlawful activity; (3) the defendant knew that the proceeds were from unlawful activity; and (4) the defendant knew that the transaction was designed, at least in part, to conceal or disguise the proceeds of the unlawful activity. United States v. Wilkinson, 137 F.3d 214, 221 (4th Cir. 1998).[4]

---

[4] The money laundering charges were predicated on the wire fraud. The parties' arguments focus on the wire fraud charges, so we focus on that issue as well. The money laundering convictions thus stand or fall based on the outcome of the wire fraud convictions.

We agree with the Government that the record contains sufficient evidence to uphold the convictions. Assuming without deciding that the district court properly interpreted the indictment,[5] the record contains sufficient evidence from which a reasonable juror could have found that Abdelbary planned to file for bankruptcy at the time he incurred the credit card charges in June 2008. In that month, Abdelbary made a series of rapid purported purchases in his convenience store with his personal credit cards. For example, on June 12, he charged $7,500 in fifteen $500 increments, all during a nine-minute span. J.A. 188–89, 1906. Two days later, Abdelbary charged $22,700, also in $500 increments, during a twenty-six minute span. J.A. 1906–07. Then, on June 21, Abdelbary again charged his credit cards in rapid succession, this time taking fourteen cards over their limit and two others to their limit. J.A. 1903. During these few weeks, Abdelbary was also making withdrawals from his bank account in less than $10,000 increments. J.A. 1905. Abdelbary never made payments on any of this credit card debt.[6]

---

[5] The Government also argues that the district court read the indictment too narrowly. Because we decide this issue on another ground, we do not address this argument.

[6] Abdelbary notes that he previously paid his credit card bills, J.A. 217–18, and that payments stopped only after Jordan Oil levied its May 2008 judgment against Abdelbary's bank account, J.A. 2005. Although this is one possible interpretation of what happened, it is not the only one. The
(Continued)

12

Less than a month later, in the middle of July, Abdelbary met with a bankruptcy attorney. According to the bankruptcy attorney, in their first meeting, Abdelbary told the attorney that he wanted to sue Jordan Oil again, not to file for bankruptcy. J.A. 102. But the jury was free to reject this testimony as incredible, especially in light of other testimony in this case. For example, Abdelbary proceeded to provide false information to the bankruptcy attorney for filings in that proceeding about whether he had made any gifts within one year or transferred any property within two years of the filing, J.A. 1944-45, and to lie at the creditors' meeting about whether he transferred assets to family members, J.A. 350. Abdelbary also hid other assets during the bankruptcy proceedings, including $20,000 in currency in his house that was discovered only during the execution of a search warrant. J.A. 210. Additionally, Abdelbary also never disclosed to the bankruptcy trustee that he had received $49,590 from family in Egypt in the spring of 2009, while the bankruptcy proceeding was pending. J.A. 1902.

Taken together, this evidence is sufficient for a reasonable juror to conclude that Abdelbary used his credit

jury could reasonably conclude, based on all of the evidence, that Abdelbary was not intending to pay the credit card bills when he incurred those charges.

cards in June 2008 with the intent of ultimately filing for bankruptcy. He engaged in a series of rapid credit card charges at his convenience store, never made any payments on those charges, met with a bankruptcy attorney soon thereafter, and then filed for bankruptcy, during which he lied about his assets on multiple occasions. Viewed in the light most favorable to the Government, this evidence is sufficient for the jury to conclude that the credit card charges were made with the intent of filing for bankruptcy so that Abdelbary could keep the cash he obtained from those credit card charges to use after his dispute with Jordan Oil concluded without having to repay the credit card companies. See Mitchell, 177 F.3d at 240.

IV.

Finally, we address the issue of the restitution award. The district court ordered Abdelbary to pay $84,079.35 in restitution to Jordan Oil for attorney's fees related to the bankruptcy proceeding. A district court's decision to award restitution is reviewed for abuse of discretion. United States v. Leftwich, 628 F.3d 665, 667 (4th Cir. 2010).

Federal law provides two forms of restitution, discretionary restitution under the Victim and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663, and mandatory restitution under the Mandatory Victim Restitution Act ("MVRA"),

14

18 U.S.C. § 3663A. These are two different restitution schemes, and each scheme requires the district court to make specific factual findings. Under the VWPA, the district court must determine "the financial resources of the defendant," as well as consider any other "appropriate" factors. 18 U.S.C. § 3663(a)(1)(B)(i)(II). Under the MVRA, the district courts must set a payment schedule based on findings about the defendant's financial resources, projected earnings, and other financial obligations. 18 U.S.C. § 3664(f)(2); see also Leftwich, 628 F.3d at 668 (discussing the structure of the VWPA and the MVRA).

Here, the district court failed to state under which act it was ordering restitution. On multiple occasions during the hearing at which the district court ordered restitution, the district court referenced § 3663, J.A. 2356, 2358, 2378; yet, when the district court imposed the restitution award, the court said it was imposing "mandatory restitution," J.A. 2379.

Recently, this Court faced a similar situation in which a district court failed to specify whether restitution was based on the VWPA or the MVRA. See Leftwich, 628 F.3d at 668–69. There, we noted that "[i]n light of the substantially different requirements of the MVRA and the VWPA, the failure of the district court to indicate which statute it was applying prevents this Court from effectively conducting appellate review of the district court's exercise of discretion." Id.

15

Therefore, consistent with <u>Leftwich</u>, we vacate the restitution award and remand the case for further proceedings at which the district court can identify which act it is applying and can make the factual findings required by that act.

V.

Based on the foregoing, we affirm Abdelbary's conviction for currency structuring.  We reverse the district court's judgment of acquittal on the wire fraud and money laundering convictions and remand for reinstatement of the jury verdict and entry of judgment against Abdelbary.  Finally, we vacate the award of restitution and remand the case to the district court for proceedings consistent with this opinion.[7]

<u>AFFIRMED IN PART, REVERSED IN PART,</u>
<u>VACATED IN PART, AND REMANDED</u>

---

[7] We have examined the remaining issues that Abdelbary raises in his brief and find them to be without merit.

16