[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12578
_____

D.C. Docket No. 1:13-cr-20063-DLG-3


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOHANA LEON,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 16, 2016)

Before JORDAN, ROSENBAUM, and SILER,[*] Circuit Judges.

JORDAN, Circuit Judge:

_____

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the Sixth Circuit, sitting by designation.

A grand jury indicted Johana Leon on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, four counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and three counts of attempting to cause a financial institution to not file a required currency transaction report (a CTR), in violation of 31 U.S.C. § 5324(a)(1) & (d)(2).  Following trial, a jury found Ms. Leon guilty of the three § 5324(a)(1) charges but acquitted her of the conspiracy and money laundering charges.  The district court, varying downward from the advisory guideline range, sentenced Ms. Leon to a term of imprisonment of 12 months and one day.

At no time during trial did Ms. Leon challenge the government's theory of prosecution or object to the jury instructions given by the district court on the § 5324(a)(1) charges.  Now, on appeal, Ms. Leon contends for the first time that the government and the district court constructively amended the indictment, allowing her to be tried and convicted of violating § 5324(a)(3), and not § 5324(a)(1).  She further argues, on a theory also not presented to the district court, that the evidence was insufficient to sustain her convictions.  Reviewing for plain error, *see United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015), we reject Ms. Leon's constructive amendment claim.  We also conclude, again under plain error review, *see United States v. Joseph*, 709 F.3d 1082, 1103 (11th Cir. 2013), that Ms. Leon's § 5324(a)(1) convictions were supported by sufficient evidence.

2

**I**

Federal law allows the Secretary of the Treasury to require, by way of regulations, that domestic financial institutions file reports of certain transactions. *See* 31 U.S.C. § 3513(a).  Under one such regulation, domestic financial institutions have a legal obligation to report, through the filing of a CTR, "a transaction in currency of more than $10,000."  31 C.F.R. § 1010.311.  Such a report "shall be filed by the financial institution within 15 days following the day on which the reportable transaction occurred."  31 C.F.R. § 1010.306(a)(1).

A "financial institution includes all of its domestic branch offices . . . for purposes of the transactions in currency reporting requirements[.]"  31 C.F.R. § 1010.313(a).  The so-called "aggregation" rule provides that, in "the case of financial institutions other than casinos, for purposes of the transactions in currency reporting requirements . . . multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day[.]"  31 C.F.R. § 1010.313(b).

In relevant part, 31 U.S.C. § 5324(a) provides that "[n]o person shall, for the purpose of evading the reporting requirements of section[s] 5313(a) or 5325 or any regulation proscribed under any such section . . . (1) cause or attempt to cause a

3

domestic financial institution to fail to file a report required under section[s] 5313(a) or 5325 or any regulation prescribed under any such section," or "(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions."  As noted, the grand jury charged Ms. Leon with three violations of § 5324(a)(1).

We have explained that § 5324(a)(1) was "aimed at efforts to prevent a required CTR from being filed," while § 5324(a)(3) "was aimed at structuring [transactions] to evade the CTR requirements."  *United States v. Phipps*, 81 F.3d 1056, 1060 (11th Cir. 1996).  And we have held that "§ 5324(a)(1) is violated only when an individual causes [or attempts to cause] a financial institution not to file a CTR that it had a legal duty to file."  *Id.* at 1062 (holding that evidence was insufficient as a matter of law to sustain a defendant's convictions under § 5324(a)(1) because, as only checks were deposited, the bank was never required to file a CTR).  So a person violates § 5324(a)(1) if he arranges financial transactions in an attempt to prevent a financial institution from complying with its duty to file a CTR for those aggregated transactions.  *See id.* at 1061.  On the other hand, a person violates § 5324(a)(3) if she structures financial transactions to evade reporting requirements and those transactions, individually or collectively, do not trigger the institution's obligation to file a CTR.  *See id.  See also* Courtney Linn,

4

*Redefining the Bank Secrecy Act: Currency Reporting and the Crime of Structuring*, 50 Santa Clara L. Rev. 407, 449-52 (2010).

## II

This case centers on Paradise Is Mine, a Florida corporation which purported to offer investment opportunities in a residential real estate development project in Rum Cay, located in the Bahamas. Ms. Leon served as the registered agent of Paradise and was one of its corporate officers. She had sole signatory authority over Paradise's bank accounts. Lawrence Foster, Ms. Leon's co-defendant, was Paradise's president.

According to the indictment, Mr. Foster, Ms. Leon, and Jordon McCarty (a third co-defendant) made fraudulent misrepresentations and promises to investors about the Rum Cay project (e.g., that Paradise was a successful real estate company with large land holdings, that Paradise had been featured in hundreds of international publications, that investors would receive above-market fixed rates of return, and that investors would get back their full principal investments after a certain period of time). Ms. Leon, the government claimed, withdrew investor funds for herself and her co-defendants from accounts controlled by Paradise.

As pertinent here, the indictment alleged that Ms. Leon—knowingly, willfully, and for the purpose of avoiding federal reporting requirements—

5

attempted to cause Bank of America not to file required CTRs concerning currency transactions exceeding $10,000, while violating another federal law and as part of a pattern of illegal activity involving more than $100,000 in a 12-month period. *See* § 5324(a)(1) & (d)(2).  According to Count 12, on January 30, 2012, she made five cash withdrawals in the amounts of $9,500, $5,500, $1,430, $1,000, and $400. According to Count 13, on July 9, 2012, she made three cash withdrawals in the amounts of $6,000, $3,995, and $500.  And according to Count 14, on September 20, 2012, she made two cash withdrawals in the amounts of $9,846 and $300.  As the indictment was pled, the government essentially charged that these withdrawals, when aggregated on a daily basis, *see* 31 C.F.R. § 1010.313(b), triggered Bank of America's obligation to file CTRs, and that Ms. Leon made the withdrawals in amounts of less than $10,000 to try to cause Bank of America to not file CTRs.

At trial, the government presented evidence that, pursuant to Treasury regulations, a financial institution is required to file a CTR when there is a cash transaction of over $10,000.  *See* D.E. 456 at 841-42; D.E. 455 at 732-33.  An FBI forensic accountant explained that the chart contained in Government Exhibit 815 separated the cashed checks and withdrawals by date and, using Counts 13 and 14 as examples, testified that the currency transactions on the dates in question were added together to exceed the $10,000 reporting threshold.  *See* D.E. 457 at 1030-

31, 1041-42, 1050-52.   Both the government and Ms. Leon, in their opening statements and closing arguments to the jury, understood that Counts 12-14 were based on an "aggregation" theory, even though that word was not used in the indictment.  *See* D.E. 526 at 15-19 (government's opening statement); D.E. 526 at 35, 38, 40 (Ms. Leon's opening statement); D.E. 461 at 54-55 (government's closing argument); D.E. 528 at 25 (Ms. Leon's closing argument).

With respect to Counts 12-14 themselves, the evidence at trial, viewed in the light most favorable to the verdict, *see, e.g., United States v. Wilson*, 788 F.3d 1298, 1309 (11th Cir. 2015), allowed the jury to find that Ms. Leon, who was the only signatory on Paradise's four corporate bank accounts, had engaged in the charged currency transactions at Bank of America in 2012.  *See, e.g.,* Gov't Ex. 815; Gov't Ex. 815c; D.E. 457 at 1032-36, 1050-51; D.E. 456 at 923-24.   The evidence also allowed the jury to find that Ms. Leon acted with the intent to evade the reporting requirements because she arranged each of the charged transactions to be below $10,000 in an attempt to cause Bank of America to not file required CTRs.  In addition to the charged withdrawals, the government presented evidence that, in a separate transaction in March of 2011, Ms. Leon told a teller at JP Morgan Chase that she was trying to avoid the filing of a CTR and asked the teller to reverse a particular transaction so that she would receive less than $10,000 in cash.  *See* D.E. 456 at 845-849, 855.  An internal JP Morgan Chase form filled out

7

by that teller reported that Ms. Leon had "done this several times before and has had similar transaction[s]." *See* D.E. 456 at 849, 855 (referring to Gov't Ex. 701).

### III

A constructive amendment to an indictment occurs when the theory or evidence presented by the government, *see, e.g., Holt*, 777 F.3d at 1261-62, or the jury instructions, *see, e.g., United States v. Williams*, 527 F.3d 1235, 1245-46 (11th Cir. 2008), alter the "essential elements" of the offense contained in the indictment to broaden the possible bases for conviction beyond what is charged. A constructive amendment, when established, is reversible error if the claim has been preserved. *See, e.g., Stirone v. United States*, 361 U.S. 212, 215-19 (1960).

Ms. Leon's contention is that the government's theory and evidence, as well as the district court's jury instructions, constructively amended the indictment by allowing her to be convicted of violating § 5324(a)(3) instead of § 5324(a)(1). Because Ms. Leon did not raise her constructive amendment argument in the district court, our review is for plain error. *See Holt*, 777 F.3d at 1261; *United States v. Madden*, 733 F.3d 1314, 1319-22 (11th Cir. 2013). That means that Ms. Leon must show that there was error, that the error was plain, and that the error affected her substantial rights. If she carries her burden, we may correct the error if it seriously affects the fairness, integrity, or public reputation of judicial

8

proceedings. *See Madden*, 777 F.3d at 1319-22 (discussing and applying *United States v. Olano*, 507 U.S. 725, 732 (1993), to a forfeited constructive amendment claim).

## A

According to Ms. Leon, the offense of "structuring" is prohibited by § 5423(a)(3) but not by § 5423(a)(1).  Building on this premise, Ms. Leon argues that there was a constructive amendment—allowing her to be convicted of uncharged §5342(a)(3) offenses—because the government repeatedly used the term "structuring" when referring to Counts 12-14.  We are not persuaded.  Both parties used the term "structuring" at trial, and the use of that term did not constructively amend the indictment.

In its opening statement, the government twice referred to Ms. Leon's conduct as "structuring," telling the jury that cash was withdrawn in amounts of less than $10,000 in order to try to avoid Bank of America filing CTRs.  *See, e.g.*, D.E. 526 at 16 ("This is structuring. This is a design."); *id.* at 19 ("Ms. Leon is guilty of structuring, of withdrawing $9,985, $9,875, arranging those transactions so that the banks don't report it.").  But the government was not alone in the use of the term "structuring."

9

In her opening statement, Ms. Leon told the jury that she was Mr. Foster's personal assistant, that she had been romantically involved with Mr. Foster, that Paradise was in her name because Mr. Foster told her he had bad credit following a divorce, that she did not profit from Paradise, and that she made withdrawals from Paradise's accounts based on instructions she received from Mr. Foster. *See, e.g., id.* at 33 ("She went to the bank as instructed. She made deposits and withdrawals as instructed."). Like the government, she referred several times to Counts 12-14 as "structuring charges." *See id.* at 35 ("And that's important because of those structuring charges the government talked to you about."); *id.* at 37 ("Because in order to find Johana Leon guilty of what they say she did, each one of those charges, each one, the wire fraud the government talked to you about, the money laundering, the structuring, require her to have knowingly [ ] participat[ed] in a fraud and acting to further it."); *id.* at 38 ("The same thing with the structuring counts: she didn't write them [the checks]."); *id.* at 40 ("I think the most important thing, going back to the structuring counts . . . the handwriting is not hers.").

In its Rule 29 argument, and in its closing argument, the government again referred to Counts 12-14 as "structuring." *See* D.E. 461 at 22 (government's Rule 29 argument: "she structured those transactions"); *id.* at 55 (government's closing argument: "And she's charged with structuring, taking that money out in under $10,000."). But so too did Ms. Leon. *See* D.E. 461 at 24 (Ms. Leon's Rule 29

argument: "With regard to the structuring counts, I'll focus particularly on Count 15[sic] . . . . So there's just no evidence to suggest that this charge was structured in a way to avoid a reporting requirement."); D.E. 528 at 25 (Ms. Leon's closing argument: "The structuring counts are the other series of counts involving Ms. Leon, and there are three of them, and in order . . . to find that Ms. Leon was structuring, you have to find that she arranged these transactions, they were each less than $10,000, but when you agglomerate them, they're more than $10,000.").

It is true that the word "structure" is contained in § 5324(a)(3) and not in § 5423(a)(1), and that courts sometimes refer to the offense set out in § 5324(a)(3) as "structuring." *See, e.g., United States v. Lang*, 732 F.3d 1246, 1247-48 (11th Cir. 2013). But we do not think that the parties' joint use of the term "structuring" as shorthand for arranging the withdrawals in question—the conduct charged in Counts 12-14—constructively amended the indictment.

The title of § 5324 is "Structuring to evade reporting requirements prohibited." Given that subsection (a)(1) is a part of § 5324, generally characterizing the conduct charged in Counts 12-14 as "structuring," while maybe a bit loose, *see Phipps*, 81 F.3d at 1060, is not reversible error. In fact, some courts and commentators have referred to both § 5324(a)(1) and § 5324(a)(3) as "structuring" offenses, leading us to conclude that the parties' word choice did not result in a constructive amendment. *See United States v. Abdelbary*, 496 F. App'x

11

273, 276, 2012 WL 5352515, at *2 (4th Cir. Oct. 31, 2012) ("Federal law criminalizes two types of structuring.  The first type, imperfect structuring, is prohibited by § 5423(a)(1) and proscribes conduct designed 'to defeat the bank's responsibility to report.' The second type, perfect structuring, is prohibited by § 5423(a)(3) and criminalizes conduct designed 'to avoid triggering the bank's duty to report.'") (quoting *United States v. Peterson*, 607 F.3d 975, 980 (4th Cir. 2010)); Linn, *Currency Reporting and the Crime of Structuring*, 50 Santa Clara L. Rev. at 451 ("'Imperfect' structuring, as defined under subsection 5324(a)(1), is similar [to subsection 5324(a)(3)] . . . [and] occurs when a [person] attempts to defeat a financial institution's reporting or recordkeeping requirement in a transaction or series of transactions that nonetheless implicate that duty."); Steven Mark Levy, Federal Money Laundering § 13.11[A] (CCH 2016) ("Conduct prohibited by Section 5324(a)(1)—that [is] designed to defeat the financial institution's responsibility to report—is known as 'imperfect structuring.'"). *See also United States v. Tobon-Builes*, 706 F.2d 1092, 1098 (11th Cir. 1983) (referring, in case decided prior to codification of § 5324(a)(1), to conduct similar to Ms. Leon's as "structuring").  Finally, a Treasury regulation defining the terms "structure" and "structuring" contemplates that one can "structure" currency transactions by splitting up withdrawals or deposits that together exceed the reporting threshold at a single bank on a single day, and explains that "structuring" is not limited to that

12

scenario.  *See* 31 C.F.R. § 1010.100(xx) ("The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.").

## B

We turn next to the district court's jury instructions for Counts 12-14, which form the second ground for Ms. Leon's constructive amendment claim.  The instructions were as follows:

> . . . Counts 12 through 14 allege that defendant Johana Leon attempted to cause a financial institution to not file a report required by law.
>
> I will explain the law governing those substantive offenses in a moment . . . .
>
> It's a federal crime under certain circumstances for anyone to knowingly evade a currency transaction reporting requirement.
>
> Domestic financial institutions and banks (with specific exceptions) must file currency transaction reports, that's a Form 4789, with the government.  They must list all deposits, withdrawals, transfers, or payments involving more than $10,000 in cash or currency.
>
> The defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:
>
> (1) the defendant knowingly attempted to structure the transactions to cause a domestic financial institution to fail to file a report;

13

(2) the purpose of the transaction was to evade the transaction reporting requirements;

(3) the transactions involved one or more domestic financial institutions; and

(4) the currency transaction with the domestic financial institutions furthered another federal crime as part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

To "structure" a transaction means to deposit, withdraw, or otherwise participate in transferring a total of more than $10,000 in cash or currency using a financial institution or bank by intentionally setting up or arranging a series of separate transactions, each one involving less than $10,000, in order to evade the currency reporting requirement that would have applied if fewer transactions had been made.

D.E. 528 at 40, 46-47.  Ms. Leon did not object to these instructions at the charge conference.  *See* D.E. 527 at 5.

In support of her constructive amendment claim, Ms. Leon argues that the instructions for the § 5324(a)(1) charges were the Eleventh Circuit "pattern instruction[s] for § 5324(a)(3)[.]"  Br. of Appellant at 48.  But that is not completely accurate.  The instructions given by the district court were actually a modified version of the pattern instructions for § 5324(a)(3).  The two substantive modifications from the pattern instructions were that element (1) was changed to reflect that Ms. Leon was charged with knowingly attempting to cause a financial institution to not file a CTR, and that the word "structured" was removed from

14

element (3). *Compare* Eleventh Cir. Pattern Jury Inst., Offense Inst. No. 112 (West 2010).[1]

Nevertheless, the instructions given by the district court were not perfect. They did not mention the Treasury's "aggregation" regulation, under which the government was proceeding, and which provides that multiple currency transactions on the same day are treated a single transaction for CTR purposes if "the financial institution has knowledge that they are by or on behalf of any person and result, in either cash in or cash out totaling more than $10,000 during any one business day[.]" 31 C.F.R. § 1010.313(b). And the instructions could have been more clear that, as required by *Phipps*, 81 F.3d at 1062, a person cannot be convicted of violating § 5324(a)(1) unless the financial institution's obligation to file a CTR has been triggered (through, for example, the application of the "aggregation" regulation). But these deficiencies did not, under plain error analysis, amount to a constructive amendment of the indictment.

First, the instructions set out a number of elements consistent with the language of § 5324(a)(1). Those were that a person has to act with a purpose to evade the reporting requirements (the language in (a) preceding (1)), and that a

---

[1] The Eleventh Circuit does not have a pattern jury instruction for a § 5324(a)(1) offense. Nor, apparently, do any of our sister circuits. Given the issues raised in this case, it might be a good idea to create such a pattern jury instruction.

person has to attempt to cause a financial institution to fail to file a report required by law (the language in (1)).

Second, the use of the word "structure" in the instructions was prejudicial to Ms. Leon only if the jury also knew that there was a separate provision—i.e., § 5324(a)(3)—that prohibited "structuring" in circumstances where the financial institution's duty to report was not triggered. The jury did not know that, so there is no indication that the word "structure" was understood as anything other than "arrange." That is certainly the way the parties understood the instructions during their closing arguments. *See, e.g.,* D.E. 528 at 25 (Ms. Leon's closing argument: "The structuring counts are the other series of counts involving Ms. Leon, and in order . . . to find that Ms. Leon was *structuring*, you have to find that she *arranged* these transactions, they were each less than $10,000, but when you agglomerate them, they're more than $10,000.") (emphasis added).

Third, although the Treasury's "aggregation" regulation explains when and how a financial institution's obligation to file a CTR is triggered through multiple daily transactions that are each individually below the reporting threshold, it is not clear that "aggregation" is, in and of itself, a distinct element of an "attempt to cause" charge under § 5324(a)(1). We have not issued any binding (or, for that matter, non-binding) decisions to that effect. The same goes for the financial institution's knowledge that the separate transactions are by or on behalf of the

16

same person.  We have never held, in a published or non-published opinion, that the financial institution's knowledge, which allows for aggregation, is an element of a § 5324(a)(1) "attempt to cause" offense.  And, as far as we can tell, nor has any other court.  In this circuit, "[a] district court's error is not 'plain' or 'obvious' if there is no precedent directly resolving the issue." *United States v. Magluta*, 198 F.3d 1265, 1280 (11th Cir. 1999).[2]

Fourth, even if we assume without deciding that the financial institution's knowledge (which permits "aggregation" of separate transactions under the Treasury regulation) is an element of a § 5324(a)(1) offense, then the most that we are presented with are jury instructions that omitted an element of the crimes charged in Counts 12-14.  Such a claim would also be reviewed for plain error because it was not asserted in the district court.  *See Johnson v. United States*, 520 U.S. 461, 466-70 (1997) (applying plain error review to forfeited claim that jury instructions omitted an element of the offense).  But Ms. Leon's claim is not that the instructions were missing a required element.  It is, instead, a very different claim—that the instructions constructively amended the indictment and allowed

---

[2] Another problem for Ms. Leon in meeting the plain error standard is that we have also never said anything about the temporal nature of a financial institution's knowledge.  Assuming that such knowledge is an element of an "attempt to cause" charge under § 5324(a)(1), is the institution required to have knowledge on the date of the multiple transactions in question?  Can it acquire the knowledge at any time before the CTR is due 15 days later?  Or can it acquire the requisite knowledge any time before trial even though the 15-day period has expired?  We leave these issues for another day.

17

her to be convicted of a non-charged offense. And we do not think that happened here.

## IV

Ms. Leon argues that there was no evidence "whatsoever" that she attempted to cause Bank of America to not file any CTRs, *see* Br. for Appellant at 53, but that one-sentence argument in her brief is devoid of any discussion of the record and fails to cite any cases or authorities. Her main assertion, as gleaned from the other parts of her brief, seems to be that the government failed to put on evidence that her transactions triggered Bank of America's obligation to file CTRs on the dates in question.

Normally we exercise plenary review over sufficiency challenges, *see generally Jackson v. Virginia*, 443 U.S. 307, 319 (1979), but Ms. Leon did not make this particular aggregation argument when she moved for a Rule 29 judgment of acquittal in the district court, *see* D.E. 461 at 24-25, so we review for plain error. *See Joseph*, 709 F.3d 1103. Based on our independent review of the trial record, which we have summarized above, Ms. Leon has not met the plain error standard with respect to her sufficiency claim.

**V**

Under plain error review, the indictment as to Counts 12-14 was not constructively amended and the evidence was sufficient to support Ms. Leon's convictions.

**AFFIRMED.**