[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10425

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MATTHEW A. ZAYAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20289-JEM-1

_____

Before JORDAN and BRASHER, Circuit Judges, and GERAGHTY,[*] District Judge.

GERAGHTY, District Judge:

Matthew A. Zayas was indicted on three counts of money laundering and one count of causing or attempting to cause a domestic financial institution to fail to file a currency transaction report under 31 U.S.C. § 5324(a)(1). After a jury trial, Zayas was acquitted of the money laundering counts, but convicted of violating 31 U.S.C. § 5324(a)(1). On appeal, Zayas contends that the government and district court constructively amended the indictment, such that he was tried and convicted of another subsection of the transaction reporting statute, § 5324(a)(3), instead of § 5324(a)(1). In addition, Zayas challenges the sufficiency of the evidence supporting the verdict and the district court's response to a jury question. After careful review, we affirm.

## I.

### A.

This case arises under the Currency and Foreign Transaction Reporting Act, commonly known as the "Bank Secrecy Act." The Bank Secrecy Act and its accompanying federal regulations require financial institutions to report any transaction in currency of more than $10,000 through the filing of a currency transaction

---

[*] Honorable Sarah E. Geraghty, United States District Judge for the Northern District of Georgia, sitting by designation.

report (CTR) with the U.S. Department of the Treasury. *See* 31 U.S.C. § 5313(a); 31 C.F.R. § 1010.311. This reporting requirement is designed to "facilitate the [government's] investigation of criminal activity," *United States v. Phipps*, 81 F.3d 1056, 1058 (11th Cir. 1996), and a bank's failure to file a required CTR subjects it to criminal penalties, *see* 31 U.S.C. § 5322.

The Bank Secrecy Act also seeks to prevent individuals from circumventing a financial institution's reporting requirements. Section 5324(a) of the Act "impose[s] criminal liability on any person who: (1) causes a financial institution to fail to file a CTR; (2) causes it to report false information on a CTR; or (3) structures transactions in an attempt to evade the CTR reporting requirement." *Phipps*, 81 F.3d at 1059; *see* 31 U.S.C. § 5324(a).

Two provisions of section 5324(a)—§ (a)(1) and § (a)(3)—are relevant here. Section 5324(a)(1) prohibits, "for the purpose of evading the reporting requirements[,] . . . caus[ing] or attempt[ing] to cause a domestic financial institution to fail to file a report *required* under section 5313(a) or 5325 or any regulation prescribed under any such section . . . ." 31 U.S.C. § 5324(a)(1) (emphasis added). We have previously held that "§ 5324(a)(1) is violated only when an individual causes [or attempts to cause] a financial institution not to file a CTR that *it had a legal duty to file*." *Phipps*, 81 F.3d at 1062 (emphasis added). In other words, a prerequisite of a § 5324(a)(1) violation is that a financial institution's reporting requirement was, in fact, triggered.

The most straightforward way that the reporting requirement can be triggered is when an individual makes a single transaction over $10,000.  But there is at least one other: Pursuant to a regulation on "aggregation," "multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during any one business day."  31 C.F.R. § 1010.313(b).  Moreover, in the aggregation context, "[a] financial institution includes all of its domestic branch offices[.]"  *Id.* § 1010.313(a).  Thus, when a bank has knowledge that a customer has made a series of transactions at its branches, collectively exceeding $10,000 in a single business day, the bank is obliged to file a CTR.

By contrast, § 5324(a)(3) prohibits "structur[ing] . . . any transaction with one or more domestic financial institutions" to evade reporting requirements, 31 U.S.C. § 5324(a)(3), even when "those transactions, individually or collectively, *do not trigger* the institution's obligation to file a CTR." *United States v. Leon*, 841 F.3d 1187, 1191 (11th Cir. 2016) (emphasis added).  Structuring is defined as "conduct[ing] or attempt[ing] to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements . . . ." 31 C.F.R. § 1010.100(xx). The prototypical example of structuring involves "breaking down . . . a single sum of currency exceeding $10,000 into smaller" transactions conducted "on one or more days," "at one or more financial institutions[.]"  *Id.*

In short, while § 5324(a)(1) targets conduct that prevents a *required* CTR from being filed, § 5324(a)(3) targets efforts that prevent a financial institution's duty to file a CTR from being triggered in the first place.

### B.

A grand jury indicted Matthew Zayas on three counts of money laundering and one count of causing or attempting to cause a domestic financial institution to fail to file a currency transaction report pursuant to 31 U.S.C. § 5324(a)(1). Following a jury trial, Zayas was acquitted of the money laundering counts, but convicted of violating 31 U.S.C. § 5324(a)(1).

Zayas's indictment, in relevant part, alleged that he "did knowingly and for the purpose of evading the reporting requirements . . . cause and attempt to cause a domestic financial institution to fail to file a report . . . that is, causing and attempting to cause Wells Fargo Bank to fail to file a currency transaction report for currency withdrawals from Wells Fargo Bank account number ending -4162." The indictment alleged three cash withdrawals of $8,000, $8,100, and $8,500, with an approximate date range of December 19, 2018, to December 20, 2018.

According to the government, these cash withdrawals took place in connection with a phone scam. In December 2018, Marcella London, then 87 years old, received a phone call from someone falsely claiming to be her grandson. The caller, whom London believed to be her grandson, asked for $25,000 because he had been in a car accident and needed help. He provided London the name

of his purported lawyer, Matthew Parker Zayas, and the information for a Wells Fargo bank account. London wired $25,000 to Zayas's Wells Fargo account on December 19, 2018. Zayas made the withdrawals that are the subject of this case hours after the wire posted to his account. Prior to London's wire, the Wells Fargo bank account belonging to Zayas never received a deposit or had money withdrawn over $1,500.

In its opening statement at trial, the government told the jury that Zayas was charged with "structuring," and had "withdrawn, in less than 24 hours, $24,600." The government argued that Zayas "withdrew the money in three different withdrawals, all slightly below the reporting threshold of $10,000" in order to "try[ ] to get the bank to not file a report." The jury would know that Zayas was evading the reporting requirements, the government predicted, because of "the way in which he withdrew [the] money[,]" that is, "[a]t three separate locations" and "in the fewest transactions possible, all below $10,000."

In its case-in-chief, the government called several witnesses. Through Secret Service Agent Christopher Xavier, the government introduced Zayas's Wells Fargo account statements, as well as surveillance photos depicting Zayas making three cash withdrawals on December 19 and December 20, 2018. In addition, Agent Xavier presented three withdrawal slips indicating that Zayas withdrew $8,000 on December 19, 2018, $8,100 on December 20, 2018, and $8,500 on December 20, 2018. Over Zayas's objections, the government asked Agent Xavier to define structuring, which he

24-10425                Opinion of the Court                7

described as "taking out funds under a threshold of $10,000 in order to not trigger a report that the bank is mandated to do once you hit $10,000."

Next, the government presented the testimony of Justin Scott Kirk, a Wells Fargo financial crimes specialist. Kirk began investigating Zayas's account in January 2019 after a wire transfer that credited the account $25,000 was recalled by the sender of that wire. In addition to testifying that cash was withdrawn from Zayas's account in a sequence of "a little bit over $8,000 [for] each withdrawal[,]" Kirk discussed Wells Fargo's "Hogan System," "a database that store[d] transactional information," including information regarding Zayas's three withdrawals. The government submitted screenshots from the Hogan System, and Kirk testified that they showed that every time Zayas made a withdrawal from his account, he did so at a teller booth and displayed his driver's license, debit card, or both.

Over Zayas's objection, Kirk also testified about the meaning of "structuring," calling it "a way to hide or obfuscate mandatory reporting requirements for a financial institution." He noted that structuring involves making "withdrawals less than that over-$10,000 mark, or sometimes in increments that would be less than the $10,000 mark to prevent a bank from automatically filing a Currency Transaction Report, or CTR." However, Kirk did not know whether Wells Fargo filed a CTR for Zayas's transactions.

The government also presented the testimony of Suhady Sencion, a business support consultant at Wells Fargo. Sencion

testified about the general protocols and rules for withdrawals from banks, including reporting requirements:

> Q. Are there reporting requirements for when people withdraw cash from a bank?
>
> A. Yes.
>
> Q. Is there a requirement that involves a withdrawal of cash for more than $10,000?
>
> A. Yes.
>
> . . . .
>
> Q. Okay. When a person withdraws more than $10,000 in cash, what does a bank have to do?
>
> A. We do what is called a CTR, which is a currency transaction review.
>
> Q. Do you do that because you want to or is it required?
>
> A. It is required.
>
> Q. By who requires it?
>
> A. The government.
>
> Q. Now, can the bank choose not to comply with that?
>
> A. No.
>
> . . . .
>
> Q. Now, the rule about the more than $10,000, is that for one business day?
>
> A. It is for one business day.

Sencion also testified that the CTR filing requirement is triggered for any series of transactions that collectively exceeds $10,000 in a single business day:

> Q. Ms. Sencion, in your bank where you work at Wells Fargo, how does the more than $10,000 reporting requirement work if somebody engages in more than one transaction in one business day?
>
> A. Typically our system will pop up and notify that a transaction over 10,000 for the same business day was processed, even if it was processed at a different branch.
>
> Q. So does the more than $10,000 reporting requirement, is it irrespective of how many transactions happen in one business day?
>
> A. That's correct.

The Government rested, and Zayas did not put on any evidence. During its closing argument, the government continued to argue that Zayas "structured" his December 2018 withdrawals at Wells Fargo to evade the $10,000 reporting threshold. For instance, the government emphasized that three hours after receiving London's wire transfer, Zayas went "directly to one of the local branches to begin to engage in a series of three transactions to take out almost the entire amount, $24,600 in three structured transactions between $8,000 and 8,500 at three different branches in less than 24 hours, each time staying under $10,000." The government further argued that "if you're trying to structure $24,600, that is exactly the way somebody would do it, under $10,000[,]" in three transactions of around $8,000 each.

### C.

After the presentation of evidence, Zayas moved for a mistrial on the ground that the government constructively amended the indictment.  Zayas contended that although the government indicted him for violating 31 U.S.C. § 5324(a)(1), its witnesses and evidence attempted to prove a violation of § 5324(a)(3) instead.  The government's witnesses, Zayas argued, described his conduct as "structuring," that is, engaging in transactions below $10,000 to avoid triggering a bank's duty to file a CTR.  According to Zayas, such conduct was prohibited under § 5324(a)(3), not § 5324(a)(1).  The district court denied Zayas's motion.

Zayas further moved for a judgment of acquittal on the § 5324(a)(1) charge, arguing that the government failed to satisfy its burden of proof.  Specifically, Zayas asserted that the government had failed to prove that he engaged in a transaction that triggered the bank's legal duty to file a report and failed to prove that he knew of the reporting requirement or acted with the purpose of evading it.  The district court denied the motion for a judgment of acquittal.

Despite indicting Zayas for a violation of § 5324(a)(1), the government proposed that the district court give the jury the Eleventh Circuit pattern jury instructions for § 5324(a)(3).  Indeed, at the charge conference, the government argued that the § 5324(a)(3) pattern instruction was appropriate because "subsection (a)(1) and (a)(3) essentially operate in the same way."

The district court recognized that the government's proposed jury instructions conflated § 5324(a)(1) and § 5324(a)(3), remarking that the government may have "screwed up, but I don't think it's fatal." As such, the district court instructed the jury on the elements of § 5324(a)(1), as Zayas requested. However, the court also provided the jury with the definition of "structure," a term that does not appear in the text of § 5324(a)(1).

During deliberations, the jury asked the court a question about the § 5324(a)(1) charge: "On structuring: if I say not guilty based on the evidence presented[,] can I say guilty based on reasoning and common sense?" Over Zayas's objection, the district court elected not to answer the jury's question with a supplemental instruction, instead directing the jury to review a portion of the court's original jury instructions.

## II.

Zayas challenges his conviction on three grounds. First, he argues that the government and district court constructively amended the indictment. Second, he contends that the government failed to present sufficient evidence that he violated § 5324(a)(1). Third, he asserts that the district court's response to the jury question during deliberations was improper. We address each argument in turn.

### A.

We review whether an indictment has been constructively amended *de novo*, and a constructive amendment constitutes *per se*

reversible error.  *United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015); *United States v. Ward*, 486 F.3d 1212, 1227 (11th Cir. 2007).

We also review *de novo* the sufficiency of evidence to support a conviction, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Rodriguez*, 218 F.3d 1243, 1244 (11th Cir. 2000).

Finally, we review a district court's response to a jury question, including its refusal to give a requested instruction, for abuse of discretion.  *United States v. Joyner*, 882 F.3d 1369, 1375 (11th Cir. 2018).

*B.*

The Fifth Amendment provides that "[n]o person shall be held to answer for a . . . crime, unless on a presentment or indictment of a grand jury."  U.S. Const., amend. V.  "A fundamental principle" stemming from the Fifth Amendment is that "a defendant can only be convicted for a crime charged in the indictment." *Ward*, 486 F.3d at 1226 (quoting *United States v. Keller*, 916 F.2d 628, 632–33 (11th Cir. 1990)).

A "constructive amendment," which is *per se* reversible error, "occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Narog*, 372 F.3d 1243, 1247 (11th Cir. 2004) (quoting *Keller*, 916

F.2d at 634).[1] An indictment can be constructively amended by the government's presentation of evidence and argument, or through the district court's instructions to the jury. *Holt*, 777 F.3d at 1261 (citing *United States v. Behety*, 32 F.3d 503, 508–09 (11th Cir. 1994)). To determine whether an indictment was improperly amended, courts "must assess the prosecutor's comments and the court's instructions 'in context' to see whether the indictment was expanded either literally or in effect." *United States v. Castro*, 89 F.3d 1443, 1453 (11th Cir. 1996) (quoting *United States v. Andrews*, 850 F.2d 1557, 1559 (11th Cir. 1988)).

Zayas contends that although he was indicted for violating 31 U.S.C. § 5324(a)(1), his indictment was constructively amended such that he was convicted under 31 U.S.C. § 5324(a)(3). In support of his constructive amendment argument, Zayas points to the government's argument and evidence, as well as the district court's jury instructions.

The government, Zayas asserts, sought to convict him of § 5324(a)(3), "[f]rom start to finish[.]" The crux of Zayas's argument is that the government repeatedly highlighted that he "structured" his December 2018 withdrawals to fall under the $10,000 reporting threshold *to avoid triggering Wells Fargo's reporting*

---

[1] A constructive amendment differs from a "variance," which refers to a situation where "the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same." *Narog*, 372 F.3d at 1247 (quoting *Keller*, 916 F.2d at 634). Here, Zayas does not contend that his trial suffered from a material variance, only that his indictment was constructively amended.

*requirement*. Zayas contends that the government's theory of the case was exclusively geared at proving a violation of § 5324(a)(3), not the § 5324(a)(1) charge on which Zayas was indicted.

The problem with Zayas's argument, however, is that the government's case-in-chief was consistent with *both* § 5324(a)(1) *and* § 5324(a)(3) offenses. The distinction between those subsections is that (a)(1) covers conduct which prevents (or attempts to prevent) a *required* CTR from being filed, while (a)(3) targets efforts that prevent a financial institution's duty to file a CTR from being triggered in the first place. But the prototypical act of structuring—splitting up a large transaction into smaller ones under $10,000 to evade reporting requirements—can be characteristic of either a § 5324(a)(1) violation or a § 5324(a)(3) violation (or sometimes both), depending on the sequencing of the transactions at issue.

Take, for instance, a defendant who, to avoid triggering a CTR, withdraws $9,000 from his bank on Monday, $9,000 on Tuesday, and $9,000 on Wednesday. That defendant would violate § 5324(a)(3) because he structured his transactions to evade reporting requirements, but never actually triggered the bank's legal obligation to file a CTR.

Now, consider another defendant who, also attempting to avoid Treasury reporting requirements, withdraws $9,000 from his bank's downtown branch on Monday morning, $9,000 from his bank's midtown branch on Monday afternoon, and $9,000 from his bank's uptown branch on Monday evening. Further consider that the bank's internal system flagged the series of transactions; that is,

the bank knew the defendant made the three withdrawals. Although the defendant engaged in three separate transactions of $9,000 at the same bank—just like the (a)(3) defendant—he did so on the *same business day*. Under the aggregation rule, because the bank has knowledge of those transactions, totaling over $10,000 on a single business day, it is obliged to file a CTR. Thus, the defendant has violated § 5324(a)(1) because he attempted to circumvent the reporting requirements by making withdrawals below $10,000, but nevertheless triggered the bank's duty to file a CTR by making those withdrawals on the same day.

Here, contrary to Zayas's position, the government's evidence was entirely consistent with a violation of § 5324(a)(1). As an initial matter, the government presented evidence that Zayas made two withdrawals of around $8,000 at different Wells Fargo branches *on the same business day*, December 20, 2018. The government also elicited testimony that Zayas's withdrawals were logged in Wells Fargo's internal systems, and that Zayas displayed his driver's license, debit card, or both, each time he made a withdrawal. Furthermore, a Wells Fargo employee testified that the bank's systems would flag a series of transactions that exceed $10,000 in a single business day. Taken together, this evidence showed not only that Zayas engaged in two transactions collectively exceeding $10,000 on December 20, 2018, but also that Wells Fargo had knowledge of these transactions and was thus obliged to file a CTR. In sum, the evidence demonstrated that Zayas violated § 5324(a)(1).

Moreover, the witness testimony and argument that Zayas emphasizes in his briefing do not show he was convicted of § 5324(a)(3) instead. For instance, Zayas argues that "the government highlighted that [he] withdrew $24,600 in less than 24 hours, 'in three different withdrawals, all slightly below the reporting threshold of $10,000' from three different bank branches, with no mention of aggregation, and instead an emphasis on the fact that his withdrawals were 'all below $10,000.'" Zayas contends that this structuring-based argument is geared at proving a violation of § 5324(a)(3), not § 5324(a)(1).

But, as explained above, transactions slightly below the $10,000 threshold can also show that a defendant attempted to cause a financial institution to fail to file a CTR under § 5324(a)(1), so long as the government also proves that those transactions exceeded $10,000 in one business day. It did so here. Although the government may not have discussed "aggregation" prominently during the trial, it did, in fact, elicit testimony about aggregation. Sencion, a Wells Fargo employee, testified that the currency reporting requirement applied to multiple transactions totaling over $10,000 in one business day. That, along with the other evidence described above, was sufficient to make out a violation of § 5324(a)(1).

Zayas also takes issue with the government's repeated use of the term "structuring" and its witnesses' explanations of "structuring" throughout the trial. He points out that the word "structuring" only appears in the text of § 5324(a)(3), not § 5324(a)(1). As

this Court has previously recognized, however, the title of section 5324 is "Structuring to evade reporting requirements prohibited." *Leon*, 841 F.3d at 1193. "Given that subsection (a)(1) is a part of § 5324, generally characterizing the conduct charged [under § 5324(a)(1)] as 'structuring,' while maybe a bit loose, . . . is not reversible error." *Id.* Indeed, several courts and commentators have used "structuring" to describe both (a)(1) and (a)(3) offenses, sometimes referring to § 5324(a)(1) as "imperfect structuring" and § 5324(a)(3) as "perfect structuring." *Id.* at 1193–94. Moreover, the Treasury regulation defining structuring makes clear that structuring includes transactions that collectively exceed $10,000 in one day, as well as those conducted over several days. *See* 31 C.F.R. § 1010.100(xx) ("The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.").

Next, Zayas points to the jury instructions to support his constructive amendment theory. Prior to trial, and during the charge conference, the government proposed that the Court charge the jury with the Eleventh Circuit's pattern instructions for § 5324(a)(3). Zayas contends that the government's proposed instructions are evidence of intent to convict him under § 5324(a)(3), not § 5324(a)(1). While there is no doubt that the government's proposed instructions related to the wrong statutory subsection, those instructions were never given to the jury. The district court recognized the government's mistake and properly charged the jury with the elements of § 5324(a)(1), as Zayas had requested.

Zayas contends, however, that the district court made an error of its own. When the court instructed the jury, it provided a definition for the term "structure," which does not appear in the text of § 5324(a)(1). The court defined to "structure" as splitting up a transaction exceeding $10,000 into smaller ones, "in order to evade the currency-reporting requirement that would have applied if fewer transactions had been made." Zayas argues, correctly, that such a definition corresponds with § 5324(a)(3), not § 5324(a)(1), because it implies that a bank's duty to file a CTR was not triggered.

Yet, although we agree with Zayas that the district court should not have provided this definition of "structure" to the jury, the district court nevertheless conveyed all the correct elements of § 5324(a)(1), including "that [Wells Fargo] was required to file a currency transaction report[.]" Further, although including the "structure" definition in the instructions could have prejudiced Zayas if the jury knew that another provision—i.e., § 5324(a)(3)—prohibited structuring even when a bank's duty to report is not triggered, *see Leon*, 841 F.3d at 1195, here the jury was not told about § 5324(a)(3). To the contrary, the jury was correctly, and completely, instructed on the elements of § 5324(a)(1). Viewed in context, the inclusion of the "structure" definition in the district court's instructions did not "so modify the elements of the offense" that Zayas "may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Gutierrez*, 745 F.3d 463, 473 (11th Cir. 2014); *see also United States v. Cochran*, 683 F.3d 1314, 1321 (11th Cir. 2012) (concluding that an isolated deficiency in jury

24-10425                Opinion of the Court                19

instructions was not reversible error, "given the circumstances of the case and the fact that other provisions of the jury instructions laid out the proper elements of the offense").[2]

## C.

Zayas contends that the government failed to present sufficient evidence to sustain his conviction under § 5324(a)(1). As stated above, when reviewing a sufficiency challenge, we view the evidence in the light most favorable to the government and resolve all reasonable inferences and credibility evaluations in favor of the jury's verdict. *United States v. Doe*, 661 F.3d 550, 560 (11th Cir. 2011). The "[e]vidence is sufficient to support a conviction if a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (internal quotations and citations omitted). If a reasonable trier of fact could so find, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Robertson*, 493 F.3d 1322, 1329 (11th Cir. 2007) (internal quotations and citations omitted).

---

[2] To the extent that Zayas argues that the inclusion of a definition for "structure" in the jury instructions constitutes reversible error—independent of his constructive amendment argument—we disagree. Because the district court provided the correct elements of § 5324(a)(1), its superfluous definition of "structure" did not "misstate the law or mislead the jury to the prejudice of" Zayas. *See United States v. James*, 642 F.3d 1333, 1337 (11th Cir. 2011) (quoting *United States v. Hansen*, 262 F.3d 1217, 1248 (11th Cir. 2001)).

Zayas argues that the government's evidence at trial was insufficient in two respects. First, Zayas contends that the two December 20, 2018, transactions cannot be aggregated for reporting purposes "because there is no evidence that the bank had knowledge that the transactions were by or on behalf of the same person." We disagree. The government established Zayas as the sole owner and signatory of the Wells Fargo account from which the funds were withdrawn. Moreover, the government elicited testimony that Zayas's withdrawals were logged in Wells Fargo's internal systems, which indicated that Zayas displayed his driver's license, debit card, or both, each time he withdrew funds. The government also presented photos from Wells Fargo's surveillance system showing that Zayas made the in-branch withdrawals. In addition, a Wells Fargo employee testified that the bank's internal database flags any series of transactions from the same account that exceeds $10,000 in a single business day. This evidence, considered together, and viewed in the light most favorable to the government, was more than adequate to demonstrate that Wells Fargo knew Zayas made two withdrawals collectively exceeding $10,000 on December 20, 2018, and therefore had a duty to file a CTR.

Second, Zayas asserts that the government failed to prove that he knew of the CTR reporting requirement and acted with the intent of evading it. But as we have explained, in a § 5324(a) case, a "defendant's understanding of the reporting requirements and his intent to evade them can be inferred from circumstantial evidence." *United States v. Bird*, 79 F.4th 1344, 1349 (11th Cir. 2023). "Indeed, we would be rather amazed—and perhaps investigators

would be quite appreciative—if individuals engaged in structuring ever wrote on bank deposit slips or in the memo lines of checks: 'For the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a).'" *Id.* As such, the jury almost always must infer *mens rea* in § 5324(a) cases from irregular patterns of transactions and related context. *See, e.g., id.* at 1351 ("[T]he record is replete with evidence of Bird's irregular payment activity, which a jury could reasonably use to infer that Bird possessed the necessary *mens rea* for the offense."); *United States v. Aunspaugh*, 792 F.3d 1302, 1310–11 (11th Cir. 2015) (finding that a reasonable jury could conclude that a pattern of splitting checks exceeding $10,000 into smaller sub-$10,000 amounts "showed an intent to avoid the reporting requirement").

Here, the withdrawals proven by the government were nothing if not irregular. Before the $25,000 wire transfer from London, the phone scam victim, Zayas's account had never received a deposit or seen a withdrawal over $1,500. But within hours of receiving the $25,000 wire, itself out of the ordinary, Zayas quickly drained his account. He made three separate withdrawals ranging from $8,000 to $8,500—slightly below the reporting threshold—at three different Wells Fargo branches. That is precisely the kind of abnormal pattern upon which a jury might reasonably conclude that Zayas acted with the intent to avoid the Bank Secrecy Act's reporting requirements.

Thus, viewing the evidence in the light most favorable to the government, as we must, we conclude that a "reasonable

construction of the evidence" permitted the jury to find that Zayas violated § 5324(a)(1). *See United States v. Iriele*, 977 F.3d 1155, 1168 (11th Cir. 2020) (quoting *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013)).

### D.

Finally, Zayas contends that the district court failed to adequately respond to a jury question during deliberations. When responding to a jury question, the district court must answer "within the specific limits of the question presented." *United States v. Baston*, 818 F.3d 651, 663 (11th Cir. 2016) (quoting *United States v. Martin*, 274 F.3d 1208, 1210 (8th Cir. 2001)). "District courts have considerable discretion regarding the extent and character of supplemental jury instructions, but the supplemental instructions cannot misstate the law or confuse the jury." *Joyner*, 882 F.3d at 1375. We review a challenged supplemental jury instruction "as part of the entire jury charge, in light of the indictment, evidence presented and argument of counsel to determine whether the jury was misled and whether the jury understood the issues." *United States v. Lopez*, 590 F.3d 1238, 1248 (11th Cir. 2009) (quoting *United States v. Johnson*, 139 F.3d 1359, 1366 (11th Cir. 1998)).

During deliberations, the jury asked the court a question about the § 5324(a)(1) charge: "On structuring: if I say not guilty based on the evidence presented[,] can I say guilty based on reasoning and common sense?" Zayas requested that the district court instruct the jury as follows: "The Government's evidence must convince you beyond every reasonable doubt. If the Government

has not introduced sufficient evidence to prove beyond a reasonable doubt that the defendant committed the crime charged, you must find him not guilty." The court declined to issue that supplemental instruction.

Instead, the court elected to refer the jury back to the third and fourth pages of its original instructions. Page three of the instructions properly explained the government's burden of proving its case beyond a reasonable doubt, including that a reasonable doubt "is a real doubt, based on your reason and common sense after you've carefully and impartially considered all the evidence in the case." The fourth page of the instructions directed the jury to "consider only the evidence . . . admitted in the case." It further noted that the jury, in considering the evidence, "may use reasoning and common sense to make deductions and reach conclusions."

These instructions were accurate statements of law and were responsive to the jury's question about the extent to which they could consider their own "reasoning and common sense." Accordingly, the district court did not abuse its discretion by directing the jury to review relevant portions of its original, and correct, instructions. *See, e.g.*, *United States v. Moore*, 76 F.4th 1355, 1374 (11th Cir. 2023) (finding that the district court properly referred the jury to its original instructions); *United States v. Bailey*, 830 F.2d 156, 157 (11th Cir. 1987) (rejecting the argument that "the judge erred by referring the jury back to the earlier jury instructions rather than directly responding to the jury's questions").

### III.

For the foregoing reasons, we conclude that Zayas's indictment was not constructively amended, that the evidence presented at trial was sufficient to convict Zayas of violating 31 U.S.C. § 5324(a)(1), and that the district court did not err in its response to the jury's question during deliberations. We therefore affirm Zayas's conviction.

**AFFIRMED.**